THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONNA DAVIS JAVITZ,               :
                                  :
              Plaintiff,          :
                                  :
    v.                            :        3:15-CV-2443
                                  :        (JUDGE MARIANI)
LUZERNE COUNTY, et al.,           :
                                  :
              Defendants.         :

*FILED SCRANTON MAR 31 2017 PER ___ DEPUTY CLERK*

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is a civil rights action brought by Plaintiff, Donna Davis Javitz, against Luzerne County, Robert Lawton, and David Parsnik (collectively "Defendants"). Plaintiff originally filed her Complaint, (Doc. 1), in this matter on December 21, 2015. The Complaint brings forward two Section 1983 actions under the Fourteenth Amendment for violation of "straight due process" (Count I), and "stigma plus" (Count I), and a Section 1983 action under the First Amendment for retaliation (Count II), along with several state law actions for breach of contract (Count III), violation of the Pennsylvania Whistleblower Law (Count IV), and wrongful termination in violation of public policy (Count IV).

Defendants filed a motion to dismiss on January 11, 2016. (Doc. 10). After the parties partially briefed the motion, Plaintiff filed an Amended Complaint on February 19, 2016. (Doc. 18). Defendants subsequently consented to the filing of the Amended

Complaint, (Doc. 19), which rendered their original motion moot, (Doc. 21), and filed the present Motion to Dismiss Plaintiff's Amended Complaint and to Strike Impertinent and Scandalous Matter. (Doc. 23). The Motion is fully briefed and ripe for decision. For the reasons that follow, the Court will grant in part and deny in part Defendants' Motion to Dismiss and grant in part and deny in part Defendants' Motion to Strike.

## II. FACTUAL ALLEGATIONS

Plaintiff's Complaint alleges the following facts:

Plaintiff, Donna Davis Javitz, was hired by Luzerne County as the Director of Human Resources on August 4, 2014. (Doc. 18 at ¶¶ 33, 39). In that capacity, Plaintiff often conducted investigatory hearings and Loudermill hearings. (*Id.* at ¶ 48). In March of 2015, after one such investigatory hearing, Plaintiff was informed that the American Federation of State, County and Municipal Employees—whose representative was present at the hearing along with union members employed by Luzerne County—was filing an unfair labor practice charge against Luzerne County. (*Id.* at ¶¶ 54, 55, 58). The unfair labor practice charge contained "verbatim notes," in transcript form, of the conversations that took place at the hearing. (*Id.* at ¶ 55). Plaintiff believed that the only way these notes could have come about is if she was recorded during the meeting by an employee of Luzerne County. (*Id.* at ¶¶ 56-58). Plaintiff never consented to being recorded. (*Id.* at ¶ 56).

Plaintiff believed that the recording was a violation of Pennsylvania's Wiretap Law, and reported the illegal activity to her supervisor, the Division Head for Administrative

2

Services, Defendant David Parsnik. (*Id.* at ¶¶ 4, 33, 59). Plaintiff also reported the illegal activity to the County Solicitor, David Pedri, and the District Attorney Stefanie Salavantis. (*Id.* at ¶¶ 19, 59, 61). On March 20, 2015, Plaintiff set up a meeting with District Attorney Salavantis to discuss the recording and invited Defendant Parsnik to attend. (*Id.* at ¶ 61). At the meeting, the District Attorney informed Plaintiff that, due to a conflict, she would refer the investigation to the Attorney General. (*Id.* at ¶ 63).

After making the report to the District Attorney, Plaintiff began noticing that she was being treated differently by her supervisor, Defendant Parsnik. Specifically, she alleges: Defendant Parsnik stopped including her in work discussions and instead went directly to her subordinates; he became extremely disrespectful to her in front of her staff; she was removed from talks with human resources consultants and vendors; her key to the filing room with the personnel files was taken away; she was no longer allowed to lead contract negotiations; she was, for the first time, told to do the filing for the office; she was no longer included in meetings; and she was no longer allowed input on the human resources budget. (Doc. 18 at ¶¶ 68, 72-74, 77-80).

On June 8, 2015, Plaintiff was meeting with District Attorney Salavantis on an unrelated matter and asked what became of the investigation. (*Id.* at ¶ 75). District Attorney Salavantis told Plaintiff that after the meeting, County Manager Robert Lawton came to her office and told her not to investigate the illegal recording. (*Id.* at ¶ 76). On several occasions, Plaintiff asked Defendant Parsnik what became of the investigation, but

never received an answer. (*Id.* at ¶ 83). On September 23, 2015, Plaintiff sent both Defendant Parsnik and Solicitor Pedri an email in which she inquired about the status of the investigation. (*Id.* at ¶ 84). She never received a response. (*Id.*).

On October 19, 2015, Defendant Parsnik scheduled a meeting for the stated purpose of discussing a Loudermill hearing with Plaintiff. (*Id.* at ¶ 87). When she arrived at the meeting with Solicitor Pedri on October 26, 2015, Defendant Parsnik told her to resign. (*Id.*). Plaintiff refused to resign and told Defendant Parsnik that she was entitled to a Loudermill hearing. (*Id.* at ¶ 88). Despite asking, Plaintiff was never given a reason why she should resign. (*Id.* at ¶¶ 89-91). Defendant Parsnik then terminated Plaintiff's employment. (*Id.* at ¶ 93). Two days after her termination, a newspaper article appeared in the Times Leader that announced that Luzerne County terminated Plaintiff's employment. (*Id.* at ¶ 94).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. ANALYSIS

Defendants have put forth a variety of arguments as to why they contend this Court should dismiss Plaintiff's Amended Complaint.  Additionally, Defendants ask this Court to strike certain material in Plaintiff's Amended Complaint that they claim is impertinent and scandalous.  The Court will address each argument in turn.

### A. Count I – Procedural Due Process

Defendants first seek dismissal of Plaintiff's procedural due process claim.  (Doc. 28 at 6).  In short, Defendants argue that Plaintiff was an at-will employee and thus had no legitimate claim of entitlement to continued employment with the County.  (*Id*. at 7-9).

The Fourteenth Amendment provides, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV § 1.  "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest . . . [is] encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property.'"  *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (alterations original) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment."  *Id*.  "Whether a person has a legitimate entitlement to—and hence a property interest in— his government job is a question answered by state law."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).

In Pennsylvania, in the absence of a contract or legislation to the contrary, an employee is employed at-will and can be terminated without cause. *See Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995); *Elmore*, 399 F.3d at 283. "In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super. Ct. 1997). In Luzerne County, Article VII of the Home Rule Charter states, in pertinent part:

> **Section 7.01—Personnel Code.** There shall be a Personnel Code that shall establish and maintain the means to recruit, select, develop, and maintain a qualified, ethical, efficient, effective, productive, and responsive work force in order to best meet the needs of Luzerne County.
>
> . . .
>
> **Section 7.03—Scope of Personnel Code.** . . . Consistent with all applicable contracts and laws, the Personnel Code shall provide, but not be limited to, policies, procedures, rules, and regulations governing employee . . . discipline, force reduction, and discharge . . . .
>
> **Section 7.04—Career Service, Exempt Service, and State Civil Service.** Each elective County official and employee of Luzerne County shall be a member of the career service, exempt service, or part of the state civil service system.
>
> A.   The Personnel Code shall define the County positions to be included in the career service. . . .
>
> B.   The exempt service shall consist of all elective County officials and certain policy-making and other positions filled outside the career

service provisions as defined in the Personnel Code.   Except for elective officials and any other serving fixed terms, those appointed to these positions shall serve at the pleasure of the person authorized to make the appointments.

(Doc. 29-1 at 44-45).  Further, the Personnel Code provides, in pertinent part:

**1002.01. Composition of County Career Service, Exempt Service, and Civil Service.**

A. The County "Career Service" shall be a permanent service to which the provisions of this article shall apply. It shall comprise all positions in the County Government now existing, or hereafter established, with the exception of those positions listed in Section 1002.01 (B).

B. "Exempt Service" positions shall consist of positions held by all elected officials, the County Manager, Chief Public Defender, Chief County Solicitor, Division Heads, Clerk of Council and other positions as promulgated under the Home Rule Charter.

. . .

**1005.02. Dismissals, suspensions and demotions.**

. . .

B. Except as the Charter provides, any dismissal, demotion to a lower-paid position, or suspension of any non-probationary employee without pay shall be for just cause only.

(Doc. 29-2 at 7, 15-16).

Thus, under the Personnel Code, it appears that those County employees who are hired in career service positions can only be terminated for just cause, while, pursuant to the Home Rule Charter, those who hold exempt service positions "serve at the pleasure of the person authorized to make the appointments."

8

Defendants argue that according to the Personnel Code's definition of "Director of Human Resources,"[1] Plaintiff was in a policy-making position, and was therefore an exempt service employee under the Home Rule Charter. (Doc. 28 at 9). Hence, they argue, Plaintiff's was an at-will employee and had no legitimate claim of entitlement to continued employment with the County and, consequently, no property interest in her continued employment. (*Id.* at 9-10).

The Court finds this argument unavailing for three reasons. First, it is not immediately clear from an examination of the Home Rule Charter and Personnel Code that the Director of Human Resources is, as a matter of the language of these documents, unambiguously classified as a policy-maker. Second, even assuming that the Director of Human Resources is a policy-making position, the Home Rule Charter provides that exempt service positions consist of "*certain* policy-making" positions, not all policy-making positions. Accordingly, the Court cannot say at this early stage that the Director of Human Resources position, even if a policy-maker, is an exempt service position. And third, Plaintiff has pleaded that she was hired as a career service employee. (Doc. 18 at ¶¶ 33, 34).

In the end, Defendants have not pointed to anything that this Court may consider on a Motion to Dismiss that definitively shows that Plaintiff's position fell within the exempt service. Thus, taking Plaintiff's assertions as true for the purposes of this Motion, Plaintiff

---

[1] Section 1001.04(C) of the Personnel Code states that "[t]he Director of Human Resources shall be responsible for the day to day management and operation of the personnel system and all other personnel system duties not specifically designated to the Head of Administrative Services." (Doc. 29-2 at 6).

has adequately pleaded that she could only be fired for cause and therefore that she had a

property interest in her continued employment. Therefore, the Court will deny Defendants'

Motion to Dismiss Plaintiff's due process claim.

## B. Count I – Stigma Plus

Defendants next argue that Plaintiff's "stigma plus" claim fails because Plaintiff has

not alleged any stigmatizing statements made by Defendants. (Doc. 28 at 11-13). As

discussed above, the Fourteenth Amendment prohibits states from "depriv[ing] any person

of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The

Supreme Court has held that a person possesses a protected liberty interest in their

reputation. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d

515 (1971). The Supreme Court later clarified, however, "that reputation alone is not an

interest protected by the Due Process Clause." *Clark v. Twp. of Falls*, 890 F.2d 611, 619

(3d Cir. 1989) (citing *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)).

"Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a

plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or

interest." *Hill*, 455 F.3d at 236 (emphasis original). This showing has become known as the

"stigma plus" test. *Graham v. City of Phila.*, 402 F.3d 139, 142 n.2 (3d Cir. 2005).

With respect to government employees,

the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. *Codd v. Velger*, 429 U.S. 624, 628, 97 S. Ct. 882,

51 L. Ed. 2d 92 (1977).   The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus."

*Hill*, 455 F.3d at 236.  Here, Defendants do not seem to contest that Plaintiff has adequately pleaded the "plus" prong of this test.  Instead, Defendants contend only that the "stigma" prong of the test is not met.  (Doc. 28 at 11-13).  "To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Hill*, 455 F.3d at 236 (internal citations omitted).

Plaintiff has alleged that the Times Leader published an article about her termination.  (Doc. 18 at ¶ 94).  The article, which was attached to the Amended Complaint, stated that Plaintiff "was unpopular with some union leaders." (Doc. 18-8).  Plaintiff confirms in her brief that this was the statement that stigmatized her.  (Doc. 31 at 7).  A fair reading of the Amended Complaint, however, does not attribute this comment to Defendants.  Instead, the Complaint only says that "Defendants offered no official comments as to the reason for the termination" and that they "referenced an article which was printed within two weeks of [Plaintiff's] March 20, 2015[,] report of the illegal recording." (Doc. 18 at ¶ 94).

Nevertheless, even if the Amended Complaint could be read to infer that Defendants did tell the newspaper that Plaintiff was unpopular with some union leaders, it is still unclear as to why that is a stigmatizing statement.  Plaintiff fails to allege any well pleaded facts that address how she was stigmatized by the article.  Instead, the Amended Complaint contains a simple conclusory allegation that Defendants' unspecified statements damaged her reputation.

A reading of the Amended Complaint and the attached article make clear that Plaintiff, as Director of Human Resources, was sometimes in an adversarial role with union leaders. In fact, Plaintiff herself alleges that she "conducted numerous investigatory and Loudermill hearings since joining the County which resulted in Defendants disciplining and even terminating employees." (*Id.* at ¶ 48). Thus, it is unclear why the statement that she was "unpopular" with those union leaders would have any stigmatizing effect on her. A single statement that is, at best, questionably stigmatizing falls short of pleading that Defendants infringed upon a liberty interest. Indeed, Courts have found certain statements—which are more stigmatizing on their face than the statement at issue here—fall short of invoking a liberty interest. *See, e.g., Brown v. Montgomery Cty.,* 470 F. App'x 87, 90-91 (3d Cir. 2012) (holding that public statement by employer that employees conduct constituted "malfeasance" was "not sufficiently stigmatizing to implicate a liberty interest."); *Kohn v. Sch. Dist. of City of Harrisburg,* 817 F. Supp. 2d 487, 498 (M.D. Pa. 2011) (finding that questioning an employee's "competency and job performance . . . is insufficient to satisfy the stigma part of the stigma-plus test"); *Poteat v. Harrisburg Sch. Dist.,* 33 F. Supp. 2d 384, 393 (M.D. Pa. 1999) ("Charges of incompetence do not implicate the liberty interest a public employee has in the manner of discharge").

In her brief, Plaintiff argues that the statement was "more damaging to Plaintiff than a definitive statement that can be specifically responded to and challenged." (Doc. 31 at 7).

But while Plaintiff cites various authorities, none of what she cites supports her proposition that being "unpopular" with professional adversaries is stigmatizing.

In the end, the Amended Complaint simply does not allege any facts that give rise to an inference that a statement attributable to Defendants stigmatized Plaintiff.  Thus, the Court will dismiss Plaintiff's "stigma plus" claim.  The Court, however, will allow Plaintiff to amend her Complaint to allege specific facts showing that it was Defendants who made the statement in question and pleading how a statement of her unpopularity with union leaders stigmatized her in any tangible way.

### C. Count II – First Amendment Retaliation

Count II of Plaintiff's Amended Complaint is a First Amendment Retaliation claim. (Doc. 18 at ¶¶ 125-33).  "To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009).  "'The first factor is a question of law; the second factor is a question of fact.'" *Id.* (quoting *Hill*, 455 F.3d at 241).

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment.  Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).  If public employees speak in the course of their

employment, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.  However, if an employee speaks as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* at 418.

As such, a Court must apply a three-step analysis in evaluating a public employee's retaliation claim for engaging in protected activity.  *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001).[2]

> First, plaintiff must establish the activity in question was protected.  For this purpose, the speech must involve a matter of public concern.  Once this threshold is met, plaintiff must demonstrate his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees.  These determinations are questions of law for the court.

> If these criteria are established, plaintiff must then show the protected activity was a substantial or motivating factor in the alleged retaliatory action.  Lastly, the public employer can rebut the claim by demonstrating it would have reached the same decision even in the absence of the protected conduct.

*Id.* at 195 (alterations, internal citations, and quotation marks omitted).

Defendants argue that this claim should be dismissed because (1) Plaintiff has not alleged anything that qualifies as protected conduct under the First Amendment, and (2)

---

[2] The Third Circuit's decision in *Baldassare* preceded the Supreme Court's ruling in *Garcetti*.  However, a review of both decisions demonstrates that the *Baldassare* decision and the principles upon which it is based are entirely consonant with the Supreme Court's holding and reasoning in *Garcetti*.

Plaintiff has failed to allege the requisite causal link between the conduct she asserts is protected and her termination. (Doc. 28 at 14-23).

### 1. Protected Conduct

"A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made.'" *Hill*, 455 F.3d at 241-42 (quoting *Garcetti*, 547 U.S. at 418).

Plaintiff's Amended Complaint alleges that Plaintiff engaged in conduct on two separate occasions that could arguably be considered protected activities. First, Plaintiff reported to Defendant Parsnik, Solicitor Pedri, and District Attorney Salavantis that Plaintiff believed she was illegally recorded by an employee of Luzerne County. (Doc. 18 at ¶¶ 58-61). Second, Plaintiff alleges that she inquired into the status of the investigation of her report orally to Defendant Parsnik and in writing to both Defendant Parsnik and Solicitor Pedri. (*Id.* at ¶¶ 83-84). Defendants argue that Plaintiff's initial report of the alleged illegal activity was not protected speech because it occurred pursuant to her official job duties. (Doc. 28 at 16).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at

421. "[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Lane v. Franks*, 134 S. Ct. 2369, 2379, 189 L. Ed. 2d 312 (2014). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* "'[W]hether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law.'" *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 988 (3d Cir. 2014) (alteration original) (quoting *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007)). "Specifically, the scope and content of a plaintiff's job responsibilities is a question of fact, but the ultimate constitutional significance of those facts is a question of law." *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015).

Here, Defendants argue that Plaintiff has pleaded that she was obligated to report criminal activity as part of her job. (Doc. 28 at 16). Specifically, Defendants point to two statements in Plaintiff's Amended Complaint. First, Plaintiff pleaded that "[t]he Luzerne County Ethics Code at Section 103.04 P. Standards of Conduct says, 'Whistleblowing, Section 1. Every Covered person is required to disclose any information which he believes evidences a violation of any law, rule or regulation.'" (Doc. 18 at ¶ 31).[3] Second, Plaintiff pleaded that "[t]he Ethics Code demands that employees report incidents of wrongdoing

---

[3] Plaintiff does not accurately quote the Ethics Code. According to the portion of the Ethics Code that Plaintiff attached to her Amended Complaint, the provision actually reads: "Every Covered Person is *encouraged* to disclose any information which he or she believes evidences a violation of any law, rule or regulation." (Doc. 18-5).

and forbids retaliation and termination of employment for making reports of wrongdoing."

(*Id.* at ¶ 112).  From this, Defendants conclude that the report was made as part of Plaintiff's

official job responsibilities, and therefore Plaintiff was not acting as a citizen when she made

the report.

To arrive at the conclusion that Defendants urge this Court to reach, however, the

Court would need to examine facts outside of the pleading.  While Plaintiff pleaded that she

had an obligation through her employment to report wrongdoing, there is no indication to

whom she was obligated to make such a report.  Accordingly, while it may be that the

meeting with the District Attorney was part of her job responsibilities, the Court is unable to

make this fact intensive determination on the allegations of Plaintiff's Amended Complaint

and based on Defendants' attack on the legal sufficiency of her Complaint by a Motion to

Dismiss.

Defendants rely on *Foraker v. Chaffinch*, a case where the Third Circuit found the

plaintiffs were not acting as citizens when they made "complaints up the chain of

command," as required by their jobs.  501 F.3d 231, 241-43 (3d Cir.2007), *abrogated on

other grounds by Borough of Duryea v. Guarnieri*, 564 U.S. 379, 131 S. Ct. 2488, 180 L. Ed.

2d 408 (2011).  There is no indication in the pleadings, however, that the District Attorney's

office is "up the chain of command" from Plaintiff's former position.  Instead, Plaintiff has

pleaded that she became aware of behavior which she believed was illegal, notified her

superior, and then set up a meeting with the District Attorney.  She has not pleaded that the

meeting with the District Attorney was part of her job duties.  In short, the determination of whether reporting a crime to the District Attorney is "ordinarily within the scope of [Plaintiff]'s duties" is a factual determination that is not amenable to resolution on the particular allegations of Plaintiff's Amended Complaint.[4]

### 2. Causal Connection

Defendants next argue that Plaintiff fails to allege a causal connection between her protected conduct and her termination. (Doc. 28 at 19-23). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). "For example, a plaintiff may establish the connection by showing that the employer gave inconsistent reasons for terminating the employee." *Farrell*, 206 F.3d at 281.

Here, the Amended Complaint adequately pleads a causal connection.  Plaintiff has alleged that after making the report to the District Attorney, (1) her supervisor stopped including her in work discussions and instead went directly to her subordinates, (2) she was removed from talks with human resources consultants and vendors, (3) her key to the filing

---

[4] In so holding, however, the Court does not mean to imply that such a determination could *never* be amenable to resolution on a motion to dismiss.

room with the personnel files was taken away, (4) she was no longer allowed to lead contract negotiations, (5) she was, for the first time, told to do the filing for the office, (6) she was no longer included in meetings, (7) her supervisor became extremely disrespectful to her in front of her staff, and (8) she was no longer allowed input on the human resources budget. (Doc. 18 at ¶¶ 68, 72-74, 77-80). In addition, Plaintiff was never given a reason for her termination. (*Id*. at ¶ 91). Taken as a whole, this is sufficient to plausibly allege a causal connection between Plaintiff's report to the District Attorney and her termination, although the sequence and timing remains an issue for discovery and possible reexamination thereafter.

### D. Count III – Breach of Contract

Count III of Plaintiff's Amended Complaint brings a claim for breach of contract. (Doc. 18 at ¶¶ 134-44). In essence, Plaintiff states that the Home Rule Charter, Personnel Code, and Ethics Code form a contract between Plaintiff and Luzerne County and that Defendants have beached that contract. (Id. at ¶¶ 135, 139). Defendants seek to dismiss this claim on the basis that Plaintiff has failed to allege the existence of a contract. (Doc. 28 at 24-27).

In Pennsylvania, "'[a] written personnel policy may serve as the basis for a cause of action for breach of a provision contained within it if under all of the circumstances, the parties manifest an intent that it become a legally binding contract.'" *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 409 (M.D. Pa. 2013) (alteration original) (quoting *Henderson v.*

*Merck & Co.*, 998 F. Supp. 532, 538 (E.D. Pa. 1998)). For a manual, personnel policy, or

"handbook to be considered a contract it 'must contain unequivocal provisions that the

employer intended to be bound by it and, in fact, renounced the principle of at-will

employment.'" *Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 504 n.2 (Pa. Super.

Ct. 1992) (quoting *Reilly v. Stroehmann Bros. Co.*, 532 A.2d 1212, 1214 (Pa. Super Ct.

1987)). "Further, under the reasonable person standard, a handbook is only enforceable as

a contract if a reasonable person in the same position as the employee would interpret its

provisions as evidencing an intent by the employer to overcome the at-will presumption."

*Anderson v. Haverford Coll.*, 851 F. Supp. 179, 181 (E.D. Pa. 1994).

In the case at hand, Plaintiff has pleaded that Luzerne County has passed legislation

that prohibited terminating certain employees, such as herself, without just cause.

Specifically, the Home Rule Charter states that Luzerne County shall establish a Personnel

Code and that "the Personnel Code shall provide, but not be limited to, policies, procedures,

rules, and regulations governing employee . . . discipline, force reduction and discharge."

(Doc. 29-1 at 44). The Home Rule Charter further states that the "County Council shall

adopt a Personnel Code by ordinance." (*Id.*). The Personnel Code, in turn, states that for

career service employees, "[e]xcept as the Charter provides, any dismissal, demotion to a

lower-paid position, or suspension of any non-probationary employee without pay shall be

for just cause only." (Doc. 29-2 at 16). As discussed above, Plaintiff has pleaded that she

was hired as a career service employee. (Doc. 18 at ¶¶ 33, 34).

Therefore, Plaintiff has adequately pleaded that Luzerne County has renounced the principle of at-will employment as it concerns certain classes of County employees, including her.  As pleaded, however, this abrogation of the at-will employment occurred through legislation, not through a bilateral, executed contract.  Thus, while the cause of action for breach of contract is not, as a technical matter, accurate, the Court recognizes that Plaintiff has pleaded that Luzerne County has legislatively promised through an ordinance not to terminate her employment without just cause and allegedly breached that promise.  Accordingly, while the Court will not dismiss Count III, it will allow Plaintiff leave to amend the breach of contract claim as it pertains to Luzerne County to accurately reflect that her cause of action does not sound in contract but in the County's violation of the legislatively enacted Personnel Code.

The analysis of Count III differs, however, as it pertains to the individual Defendants. Defendants argue that Plaintiff has failed to allege a contractual relationship between Plaintiff and Defendants Lawton and Parsnik.  (Doc. 28 at 24-25).  The Court agrees. Nowhere in the Amended Complaint does Plaintiff allege any sort of contractual relationship between Plaintiff and Defendants Lawton and Parsnik.  Therefore, the Court will dismiss Count III as it pertains to Defendants Lawton and Parsnik.

## E. Count IV – Whistleblower Law

Defendants next move to dismiss Plaintiff's claim for termination in violation of

Pennsylvania's Whistleblower Law, 43 P.S. § 1423(a).  Section 1423 of the Whistleblower

Law, in relevant part, provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423(a).  "Wrongdoing" is defined as "[a] violation which is not of a merely

technical or minimal nature of a Federal or State statute or regulation, of a political

subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the

interest of the public or the employer."  43 P.S. § 1422.

"[W]here the reported wrongdoing is not that of the employing agency, but of a third

party, the wrongdoing must involve a statute enforced by the employing agency."  *Rohner v.*

*Atkinson*, 118 A.3d 486, 491 (Pa. Commw. Ct. 2015).  When, however, "the employee

alleges that there has been illegal activity within his own agency . . . 'wrongdoing' includes

. . . violations of any federal or state statute or regulation, other than violations that are 'of a

merely technical or minimal nature.'"  *Golaschevsky v. Dep't of Envtl. Prot.*, 720 A.2d 757,

759 (Pa. 1998) (quoting 43 P.S. § 1422).  Thus, if an employee "reported to his supervisors

that fellow employees were dealing drugs out of the office, such conduct would constitute

'wrongdoing', regardless of the fact that [the employer] is not charged with enforcing the drug laws." *Id.* at 759 n.2.

Here, Defendants argue that Plaintiff's Amended Compliant "fails to specify how Defendants are guilty of waste or wrongdoing." (Doc. 28 at 28). The Whistleblower law, however, contains no requirement that the report of wrongdoing must concern those who ultimately terminate the employee. Instead, a report concerning the wrongdoing of fellow employees may qualify for whistleblower protection. *See Golaschevsky*, 720 A.2d at 759. In this case, Plaintiff has pleaded that she reported to her employer an alleged violation of state law by a County employee. (Doc. 18 at ¶¶ 151). Specifically, she reported that a County employee allegedly recorded her conversation, without her consent, in violation of Pennsylvania's Wiretap Law. (*Id.* at ¶¶ 147-154). This is sufficient to allege an "instance of wrongdoing" under the Whistleblower Law.

Next, Defendants argue that Plaintiff has failed to allege enough facts about how the report of wrongdoing was causally connected with her termination. (Doc. 28 at 28-29). To establish a causal connection "a plaintiff must 'show by concrete facts or surrounding circumstances that the report [of wrongdoing or waste] led to [the plaintiff's] dismissal, such as that there was specific direction or information received not to file the report or [that] there would be adverse consequences because the report was filed.'" *Golaschevsky*, 720 A.2d at 759 (alterations original) (quoting *Gray v. Hafer*, 651 A.2d 221, 225 (Pa. Commw. Ct. 1994)); *see also O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001) ("[A]

Whistleblower Law claimant must come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts.").

The Court has already discussed the factual allegations in Plaintiff's Amended Complaint that adequately pleaded a causal connection between her report to the District Attorney and her termination with respect to Plaintiff's First Amendment retaliation claim. *See supra*, Section IV.C.2. Because Plaintiff has pleaded that the report to the District Attorney occurred contemporaneously with her report to her employer, (Doc. 18 at ¶ 59), the factual allegations that provide support for her First Amendment claim provide support for her Whistleblower Law claim. In addition, Plaintiff has pleaded that Defendant Lawson expressed that he did not want the District Attorney's Office to pursue the investigation and that Defendant Parsnik refused to discuss the investigation when Plaintiff inquired about it on subsequent occasions. (*Id*. at ¶¶160-62). At this early stage, Plaintiff's allegations are sufficient to plead that her report to her employer is casually connected to her termination.[5]

---

[5] There seems to be some conflict in the case law about the relationship between the causal connection requirement under the Whistleblower Law and the causal connection requirement in the First Amendment retaliation context. *Compare Cavicchia v. Phila. Hous. Auth.*, 137 F. App'x 495, 497 (3d Cir. 2005) ("The District Court also granted summary judgment against [Plaintiff]'s claim under Pennsylvania's Whistleblower Statute . . . noting that the standard was more stringent than the one for a First Amendment retaliation claim.") *with Volek v. Redevelopment Auth. of the Cty. of Fayette*, 24 F. Supp. 3d 473, 493 (W.D. Pa. 2014) ("Both parties acknowledge that the same legal standards and factual background apply to both the First Amendment claim and the Pennsylvania [Whistleblower Law] claim."). Nevertheless, even assuming a more stringent standard applies, Plaintiff has alleged enough facts in her Whistleblower claim to plead a plausible claim for relief under *Iqbal/Twombly*.

## F. Count IV – Wrongful Termination

Defendants next seek dismissal of Plaintiff's common law claim for wrongful

termination in violation of public policy.  (Doc. 28 at 29-34).  "A cause of action for wrongful

discharge . . . may be maintained only in the absence of a statutory remedy for an

aggrieved employee."  *Freeman v. McKellar*, 795 F. Supp. 733, 742 (E.D. Pa. 1992); *see*

*also Rettinger v. Am. Can Co.*, 574 F. Supp. 306, 311 (M.D. Pa. 1983).  "Courts have

specifically applied this rule to bar common law claims where a plaintiff had cognizable

claims under the Whistleblower Act."  *Katzenmoyer v. City of Reading*, 158 F. Supp. 2d 491,

503 (E.D. Pa. 2001).

Here, as discussed in the prior section, Plaintiff has alleged a violation of the

Whistleblower Law.  As such, her common law claim for wrongful termination, which is

based on the same factual assertions,[6] may not proceed.  *See Freeman*, 795 F. Supp. at

742 (dismissing wrongful discharge claim because "plaintiff has an appropriate statutory

remedy under the Whistleblower Act"); *Palazzolo v. Damsker*, 2011 WL 2601536, at *7

(E.D. Pa. 2011) (same); *see also Kent v. Keystone Human Servs.*, 68 F. Supp. 3d 565, 568

(M.D. Pa. 2014) (recognizing that courts have "barred plaintiffs from pursuing the public

policy exception when the whistleblower law affords a remedy"); *Larochelle v. Wilmac Corp.*,

---

[6] It is clear, from both Plaintiff's Amended Complaint and her Brief in Opposition, that her claim for wrongful discharge is based on the same factual allegations as her Whistleblower Law claim.  First, Plaintiff pleads both claims in a single count in the Amended Compliant.  (Doc. 18 at ¶¶ 145-68).  Then, if there were any lingering doubts, Plaintiff's Brief in Opposition argues that "there is no question that Plaintiff has stated a claim for wrongful discharge in violation of public policy since the [sic] she should not have been fired for reporting a violation of the law and *blowing the whistle*."  (Doc. 31 at 23) (emphasis added).

___ F. Supp. 3d ___, 2016 WL 5404474, at *34 (E.D. Pa. 2016) ("Courts have routinely dismissed wrongful discharge claims when the plaintiffs who bring them have available statutory remedies for alleged discrimination or retaliation").

Accordingly, the Court will grant Defendants' Motion to Dismiss as it pertains to Plaintiff's common law claim for wrongful termination in violation of public policy.

### G. Motion to Strike

Defendants also seek to strike six paragraphs from Plaintiff's Amended Complaint. Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). "Relief under Federal Rule of Civil Procedure 12(f) is generally disfavored, and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Fiorentino v. Cabot Oil & Gas Corp.*, 750 F. Supp. 2d 506, 509 (M.D. Pa. 2010) (internal quotation marks omitted).

Defendants seek to strike paragraphs nine through eleven of Plaintiff's Amended Complaint—which discuss past scandals and instances of political corruption in Luzerne County which predate the time period relevant to this lawsuit—as impertinent and scandalous. (Doc. 28 at 34-35). Plaintiff argues that this information provides necessary

background information for why Luzerne County changed its government structure.  (Doc. 31 at 25).  The Court, however, sees no possible relation between the substance of these paragraphs and the current lawsuit.  Therefore, the Court will strike paragraphs nine and ten and the first clause of paragraph eleven that reads "As a result of this scandal and corruption."  The Court, however, will not strike the remainder of paragraph eleven that reads "the voters decided to change the form of government from Commissioner Style government to Home Rule."

Next, Defendants seek to strike paragraphs fifteen through seventeen—which discuss Mr. Parsnik's employment history—as impertinent.  (Doc. 28 at 35).  The Court, however, cannot say that these paragraphs categorically fail to pertain to Plaintiff's claims.  Thus, the Court will deny Defendants' Motion to strike these paragraphs.

## V. CONCLUSION

For the reasons outlined above, this Court will grant in part and deny in part Defendants' Motion to Dismiss.  The Court will also grant in part and deny in part Defendants' Motion to Strike.  A separate Order follows.

Robert D. Mariani
United States District Judge