THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONNA DAVIS JAVITZ,

        Plaintiff,

v.                         **3:15-CV-2443**
                                 **(JUDGE MARIANI)**

LUZERNE COUNTY, et al.,

        Defendants.

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is a wrongful termination action brought by Plaintiff,

Donna Davis Javitz, against Defendants Luzerne County, Robert Lawton, and David

Parsnik. Plaintiff originally filed her Complaint in this matter on December 21, 2015. (Doc.

1). After this Court resolved Defendants' Motion to Dismiss, (Doc. 23), and Plaintiff

amended her complaint, the following counts remain outstanding: a 42 U.S.C. § 1983 claim

against all Defendants for violation of Plaintiff's Fourteenth Amendment due process rights

(Count I), a section 1983 claim against all Defendants for retaliation in violation of Plaintiff's

First Amendment rights (Count II), a state law claim against Defendant Luzerne County for

breach of legislative enactments (Count III), and a state law claim against all Defendants for

violation of the Pennsylvania Whistleblower Law, 43 P.S. § 1423(a), (Count IV). (Doc. 58).

Presently before the Court is Plaintiff's Motion for Partial Summary Judgement, (Doc.

62), and Defendants' Motion for Summary Judgment, (Doc. 66). For the reasons that

follow, the Court will deny Plaintiff's Motion, grant Defendants' Motion with respect to Plaintiff's federal claims, and decline to exercise supplemental jurisdiction over the remaining state law claims.

## II. STATEMENT OF UNDISPUTED FACTS

The following facts are undisputed unless specifically noted otherwise:

On August 4, 2014, Plaintiff began her employment for the County of Luzerne as the Director of Human Resources. (Doc. 67 at ¶¶ 22-23; Doc. 92 at ¶¶ 22-23; Doc. 69-4). Her supervisor was Defendant David Parsnik, Director of Administrative Services. (Dep. of Donna Davis Javitz, Doc. 69-6 at 84; Doc. 69-4). The County Manager at the time was Defendant Robert Lawton. (Dep. of Donna Davis Javitz, Doc. 69-6 at 33; Doc. 67 at ¶ 34; Doc. 92 at ¶ 34).

As Director of Human Resources, Plaintiff's job duties included negotiating contracts, dealing with employee complaints, responding to grievances, conducting investigations, and attending meetings. (Doc. 67 at ¶ 27; Doc. 92 at ¶ 27). Plaintiff was also involved with union related matters and participated in two investigatory meetings with the American Federation of State, County, and Municipal Employees ("AFSCME"). (Dep. of Donna Davis Javitz, Doc. 69-6 at 39, 65-66). In March of 2015, after the investigatory meetings with AFSCME took place, the union filed an unfair labor practice charge against the County. (Doc. 67 at ¶ 30; Doc. 92 at ¶ 30). As part of the unfair labor practice charge, AFSCME had included a document that appeared to be a transcript of the meetings. (Dep. of Donna

2

Davis Javitz, Doc. 69-6 at 65-66). Upon reading the unfair labor practice charge, Plaintiff was concerned that Paula Schnelly, a County employee who was at the meetings as an AFSCME union representative, created the transcript by recording the meeting without the consent of those present. (Dep. of Donna Davis Javitz, Doc. 69-6 at 55, 59, 66, 75; Doc. 69-8 at 14).

Plaintiff brought her concern to the attention of Defendant Parsnik, and Defendant Parsnik agreed that the transcript may have been the product of an illegal recording. (Doc. 67 at ¶ 31; Doc. 92 at ¶ 31). Plaintiff and Defendant Parsnik then met with the District Attorney, Stefanie Salavantis, to discuss the matter. (Doc. 67 at ¶ 32; Doc. 92 at ¶ 32). The District Attorney indicated that she would refer the matter to the Office of Attorney General due to a conflict of interests. (Doc. 67 at ¶ 33; Doc. 92 at ¶ 33). According to Plaintiff, Defendant Lawton went to the District Attorney after this point and instructed her not to investigate the matter. (Dep. of Donna Davis Javitz, Doc. 69-6 at 78). Defendants deny that this occurred. (Aff. of Stefanie Salavantis, Doc. 69-29).

Over the next few months, Plaintiff asked Defendant Parsnik and the County Solicitor, David Pedri, about the status of the investigation on several occasions. (Doc. 67 at ¶ 35; Doc. 92 at ¶ 35). She also asked District Attorney Salavantis about the investigation at least once. (Dep. of Donna Davis Javitz, Doc. 69-6 at 78).

After making the report to the District Attorney, things began happening at work that Plaintiff believed were done in retaliation for her making the report to the District Attorney.

3

(Doc. 67 at ¶ 67; Doc. 92 at ¶ 67). For instance, in May of 2015, the Human Resources office was relocated from the County courthouse to another building. (Doc. 67 at ¶ 44; Doc. 92 at ¶ 44). Defendant Parsnik began going directly to Plaintiff's subordinates with work instead of going through Plaintiff. (Dep. of Donna Davis Javitz, Doc. 69-6 at 83-84). Plaintiff was kept from handling any matters with AFSCME and no longer allowed access to the Human Resources budget. (Id. at 85-87). Defendant Parsnik refused to allow her to have a key to the room that housed the filing cabinets and began to direct her do things that had not been part of her job before, such as filing. (Id. at 125-26). Plaintiff also believed that Defendant Parsnik began to act in a rude manner to her. (Doc. 67 at ¶ 60; Doc. 92 at ¶ 60). Defendants' deny that some of these occurred and also deny that any of these actions were taken in retaliation for Plaintiff's report to the District Attorney. (Doc. 67 at ¶ 44-46, 48-52, 54-55, 64-65).

On October 26, 2015, Plaintiff was called into a meeting with Defendant Parsnik and Solicitor Pedri and informed that it would be Plaintiff's last day of work. (Dep. of Donna Davis Javitz, Doc. 69-6 at 91-93). Defendant Parsnik offered to let Plaintiff resign, but Plaintiff refused. (Id.). Plaintiff asked for a Loudermill hearing but was told she could not have one. (Id.) Defendant Parsnik then informed Plaintiff that she had to go. (Id.). Plaintiff was not given a reason for her termination. (Id.).

4

## III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light

most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### IV. ANALYSIS

Both Plaintiff and Defendants have filed Motions for Summary Judgment with respect to Plaintiff's Fourteenth Amendment due process claim. Additionally, Defendant has moved for summary judgment on all Plaintiff's other claims and her claim for punitive damages. The Court will address Defendants' Motion first.

6

## A. Defendants' Motion for Summary Judgment

Defendants' have put forth a variety of arguments as to why they are entitled to summary judgment on each of Plaintiff's claims as well as on Plaintiff's claim for punitive damages. The Court will address each claim separately.

### 1. Fourteenth Amendment Claim

Defendants first seek summary judgment on Plaintiff's claim that the manner of her termination violated the due process clause of the Fourteenth Amendment because she was not afforded a pre-termination hearing. The Fourteenth Amendment provides, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest . . . [is] encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property.'" *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (alterations original) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Id.* "Whether a person has a legitimate entitlement to—and hence a property interest in—his government job is a question answered by state law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).

In Pennsylvania, in the absence of a contract or legislation to the contrary, an employee is employed at-will and can be terminated without cause. *See Stumpp v.*

7

*Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995); *Elmore*, 399 F.3d at 283. "In order

to rebut the presumption of at-will employment, a party must establish one of the following:

(1) an agreement for a definite duration; (2) an agreement specifying that the employee will

be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable

recognized public policy exception." *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214

(Pa. Super. Ct. 1997). Plaintiff argues that she was not an at-will employee because, under

the terms of the Luzerne County Home Rule Charter and Personnel Code, she could only

be terminated for "just cause."

In Luzerne County, Article VII of the Home Rule Charter states, in pertinent part:

> **Section 7.01—Personnel Code**. There shall be a Personnel Code that shall establish and maintain the means to recruit, select, develop, and maintain a qualified, ethical, efficient, effective, productive, and responsive work force in order to best meet the needs of Luzerne County.
>
> . . .
>
> **Section 7.03—Scope of Personnel Code**. . . . Consistent with all applicable contracts and laws, the Personnel Code shall provide, but not be limited to, policies, procedures, rules, and regulations governing employee . . . discipline, force reduction, and discharge . . . .
>
> **Section 7.04—Career Service, Exempt Service, and State Civil Service.** Each elective County official and employee of Luzerne County shall be a member of the career service, exempt service, or part of the state civil service system.
>
> A. The Personnel Code shall define the County positions to be included in the career service. The career service shall be designed to attract, appoint, and promote the best qualified individuals on the basis of a fair and open competitive process. The Personnel Code shall set forth the process by which employees in the career service shall be

8

appointed and promoted on the basis of merit and fitness as demonstrated by valid and reliable examinations, other objective evidence of competence, and/or other relevant factors.

B.  The exempt service shall consist of all elective County officials and certain policy-making and other positions filled outside the career service provisions as defined in the Personnel Code. Except for elective officials and any others serving fixed terms, those appointed to these positions shall serve at the pleasure of the person authorized to make the appointments.

(Doc. 69-1 at 44-45). Further, the Personnel Code provides, in pertinent part:

**1002.01. Composition of County Career Service, Exempt Service, and Civil Service.**

A. The County "Career Service" shall be a permanent service to which the provisions of this article shall apply. It shall comprise all positions in the County Government now existing, or hereafter established, with the exception of those positions listed in Section 1002.01 (B).

B. "Exempt Service" positions shall consist of positions held by all elected officials, the County Manager, Chief Public Defender, Chief County Solicitor, Division Heads, Clerk of Council and other positions as promulgated under the Home Rule Charter. Classification of positions in the County Exempt Service does not determine whether positions are exempt or non-exempt positions as specified under 29 CFR Part 541, Section 13(a)(1) of the Fair Labor Standards Act and its amendments as made from time to time. Exempt Service positions other than elected positions shall be filled using a merit-based recruitment and selection process, with the clear intent of attracting well-qualified individuals on the basis of a fair and open competitive process.

. . .

**1005.02. Dismissals, suspensions and demotions.**

. . .

9

> B. Except as the Charter provides, any dismissal, demotion to a lower-
> paid position, or suspension of any non-probationary employee without
> pay shall be for just cause only.

(Doc. 69-2 at 7, 15-16).

Thus, under the Personnel Code, it appears that those County employees who are

hired in career service positions can only be terminated for just cause, while, pursuant to the

Home Rule Charter, those who hold exempt service positions "serve at the pleasure of the

person authorized to make the appointments." (Doc. 69-1 at 45). Consequently, the

question before the Court is whether there is a genuine dispute of fact as to whether Plaintiff

was an exempt service employee.

Turning first to the language of the Charter and Code, the Court notes that the

documents, when read together, do not definitively place the Director of Human Resources

position in the exempt service or the career service. Section 7.04 (A) of the Charter

provides that "[t]he Personnel Code shall define the County positions to be included in the

career service." (Doc. 69-1 at 44). Section 1002.01 (A) of the Personnel Code, in turn,

provides that the career service "shall comprise all positions in the County Government now

existing, or hereafter established, with the exception of those positions listed in Section

1002.01 (B)." (Doc. 69-2 at 7). Section 1002.01 (B) of the Code provides that "'Exempt

Service' positions shall consist of positions held by all elected officials, the County Manager,

Chief Public Defender, Chief County Solicitor, Division Heads, Clerk of Council *and other*

*positions as promulgated under the Home Rule Charter*." (*Id.*) (emphasis added). Finally,

Section 7.04 (B) of the Charter provides that "[t]he exempt service shall consist of all elective County officials and certain policy-making *and other positions* filled outside the career service provisions as defined in the Personnel Code." (Doc. 69-1 at 44) (emphasis added).

In addition to being somewhat circular, these provisions provide a broad definition of the positions that may be included as part of the exempt service. Indeed, the use of the term "other positions filled outside of the career service provisions," as used in the Charter's definition of exempt service, is certainly broad enough to include the position of Director of Human Resources. Further, nothing in the definitions of career service provide that the Director of Human Resources must be a career service position. Accordingly, nothing in the Home Rule Charter or the Personnel Code establishes that the Director of Human Resources is per se a career service position or exempt service position.[1]

Plaintiff nonetheless argues that "[u]nder the Charter, an employee may only become an exempt service employee in two ways: (1) by being elected by the people of Luzerne County to an official position, or (2) being an enumerated position in the Personnel

---

[1] Plaintiff points out that, when Defendant Parsnik was questioned about the Home Rule Charter and Personnel Code at his deposition, he indicated that the Director of Human Resources was a career service position under those documents. (Doc. 94 at 12). The Court need not dwell on this point long. The Home Rule Charter and Personnel Code are government enactments that are susceptible to legal interpretation by the courts. Defendant Parsnik's lay interpretations of those documents during his deposition are no more informative to this Court than if Defendant Parsnik was handed a copy of the Fourteenth Amendment and asked to interpret what protections Plaintiff has under the due process clause. While such testimony could establish Defendant Parsnik's state of mind, it does not affect this Court's interpretation of the Home Rule Charter and Personnel Code. The interpretation of those documents present questions of statutory interpretation for the Court, not a lay witness.

11

Code." (Doc. 94 at 10). Plaintiff then argues that the Director of Human Resources position is not enumerated in Section 1002.01 (B) of the Personnel Code. Nothing in the Home Rule Charter, however, states that the position needs to be enumerated in the Personnel Code to be an exempt service position. Instead, the Home Rule Charter provides that "other positions filled outside the career service provisions as defined in the Personnel Code" may be exempt service positions. (Doc. 69-1 at 44). The career service provisions in the Personnel Code simply describe the merit based hiring system utilized by the County.[2] (Doc. 69-2 at 7-12).

In sum, the Home Rule Charter and Personnel Code do not establish one way or the other that Plaintiff was an exempt service employee or a career service employee.

Defendants argue that Plaintiff's offer of employment with the County undisputedly establishes that she is an at-will, exempt service employee. The document states, in pertinent part, as follows:

This letter serves as a formal "Offer of Employment" with Luzerne County. Such offer is in accordance with the following terms and conditions:

- Position        Human Resources Director
- Employment Status   Management Level, Non Union; Exempt;
                       Regular Full Time

---

[2] Although the record reflects that Plaintiff was hired through a merit based selection process, this does not necessarily indicate that she was a career service employee because the exempt service provisions also prescribe "a merit-based recruitment and selection process" that has "the clear intent of attracting well-qualified individuals on the basis of a fair and open competitive process." (Doc. 69-2 at 7). Thus, the career and exempt services employees—except elected officials—must be hired through a merit based process, but exempt service employees need not be hired through the specific process prescribed by the Personnel Code.

12

- Department          Human Resources, Division of
                      Administrative Services
- Base Salary         $55,000 per annum, paid bi-weekly
                      Eligibility for participation in County's
                      Benefit Package to include Healthcare &
                      Pension Plan (see Personnel Policy for
                      complete listing of benefits)
- Effective Date      August 4, 2014

Also note that your employment with Luzerne County is "At Will" consistent with applicable PA State Law.

. . .

Please sign below as acceptance of employment and acknowledgement of the terms and conditions of the employment and return it to the Human Resources Office.

(Doc. 69-4). Plaintiff signed the letter and dated it August 4, 2014. (*Id.*). Defendant Parsnik also signed the letter. (*Id.*).

"It is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982). "[W]here language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended." *Id.* "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993).

13

Here, the unambiguous language of the offer of employment states that Plaintiff is an at-will employee. As career service employees are not at-will under the Home Rule Charter and the Personnel Code, but exempt service employees "serve at the pleasure of the person authorized to make the appointment[ ]," (Doc. 69-1 at 45), the letter indicates that Plaintiff was hired as an exempt service employee. Additionally, the document states that she will be an "exempt" employee.[3] Accordingly, the Court finds that, based on the unambiguous terms of the offer of employment that Plaintiff signed, Plaintiff is an at-will, exempt service employee. As a result, Plaintiff had no property interest in her job and the due process clause is not implicated in her termination.

Nonetheless, Plaintiff argues that the Court should disregard the offer of employment because, according to Plaintiff, she accepted the offer of employment with the County over the phone before signing the letter. (Doc. 94 at 15). Plaintiff argues that this verbal agreement was the employment contract and that she was offered no additional consideration for signing the written offer of employment. Thus, she argues, the offer of employment letter is a nullity.

---

[3] Plaintiff argues that the use of the word "exempt" in the offer of employment does not refer to the exempt service under the Home Rule Charter, but instead refers to exempt status under the Fair Labor Standards Act. (Doc. 94 at 14). Plaintiff points to her affidavit where she explains her understanding of what "exempt," as used in the offer of employment, means. The Court, however, will not accept Plaintiff's invitation to examine extraneous evidence to discover the meaning of an unambiguous term in a contact. See Krizovensky, 624 A.2d at 642. "The court, as a matter of law, determines the existence of an ambiguity." Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986). "A contract is ambiguous if it is capable of being understood in more than one sense." Id. Here, the Court finds no ambiguity in the use of the word "exempt" in Plaintiff's offer of employment, especially considering that the letter also identifies her as an "at will" employee.

14

Plaintiff's argument is unpersuasive.

Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations *and verbal agreements* are merged in and superseded by the subsequent written contract and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

Therefore, for the parol evidence rule to apply, there must be a writing that represents the entire contract between the parties. To determine whether or not a writing is the parties' entire contract, the writing must be looked at and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement, it is conclusively presumed that the writing represents the whole engagement of the parties.

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (emphasis added) (internal citations, alterations, and quotation marks omitted). When a contract "represents a final and complete expression of the parties' agreement," it is considered integrated. *Lenzi v. Hahnemann Univ.*, 664 A.2d 1375, 1379 (Pa. Super. Ct. 1995). "The issue of whether a writing constitutes an integrated contract is a question of law." *Id.* "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Yocca*, 854 A.2d at 436-37.

Here, the offer of employment represents a complete, fully integrated contract between the parties. It identifies itself as a "formal 'Offer of Employment' with Luzerne

15

County." (Doc. 69-4). It specifies Plaintiff's position, salary, start date, and eligibility for benefits. (*Id.*). Finally, it indicates that the recipient should "sign below as acceptance of employment and acknowledgement of the terms and conditions of the employment." (*Id.*). Plaintiff has identified no subject matter contained in her prior oral agreement for employment that is not addressed by the written agreement. Accordingly, the Court has no trouble concluding that the written agreement is a fully integrated contract.

While Plaintiff argues that an oral agreement formed an employment contract and the subsequent written agreement was invalid because she was not provided any additional consideration for her signature, the case law is clear that prior oral agreements are merged in and superseded by subsequent written agreements that address the same subject matter. *See Yocca*, 854 A.2d at 436. Further, Plaintiff, a licensed attorney, has not argued that she was fraudulently induced to sign the contract or that she signed the contract by mistake. Thus, the parol evidence rule prohibits her from introducing evidence of her prior oral agreement to vary the terms of the written offer of employment.[4]

Accordingly, because the offer of employment Plaintiff signed unambiguously establishes that she is an at-will employee, and because nothing in the Home Rule Charter and Personnel Code prevents Plaintiff from being classified as a exempt service employee

---

[4] Plaintiff also argues that the letter does not constitute a valid contract because a municipality cannot contract around the laws regarding at will employment. (Doc. 94 at 15-16). That is, Plaintiff argues that the Home Rule Charter and the Personnel Code establish that the Director of Human Resources is a career service employee who can only be terminated for just cause and Defendants' offer of employment cannot be at odds with the terms of those documents. As the Court has already determined, however, the Director of Human Resources is not definitively a career service position or an exempt service position under the Charter and Code.

16

who "serve[s] at the pleasure of the person authorized to make [her] appointment[ ]," (Doc. 69-1 at 45), there is no genuine dispute of fact as to whether Plaintiff had a property interest in her continued employment. Consequently, because Plaintiff had no property interest in her continued employment and the due process clause was therefore not implicated in her termination, the Court will grant Defendants' Motion for Summary Judgment as it pertains to Plaintiff's Fourteenth Amendment claim.

### 2. First Amendment Retaliation Claim

Defendants next move to dismiss Plaintiff's First Amendment retaliation claim. "To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009). "'The first factor is a question of law; the second factor is a question of fact.'" *Id.* (quoting *Hill*, 455 F.3d at 241).

With respect to the first factor, "[t]he [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). If public employees speak in the course of their employment, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from

17

employer discipline." *Id*. at 421. However, if an employee speaks as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id*. at 418. Thus, a public employee's "speech is protected by the First Amendment only (1) if he spoke as a citizen (and not as an employee), (2) if his speech involved a matter of public concern, and (3) if his employer lacked an adequate justification for treating him differently from the general public."[5] *De Ritis v. McGarrigle*, 861 F.3d 444, 452 (3d Cir. 2017) (quotation marks omitted); *see also Hill*, 455 F.3d at 241-42 (quotation marks omitted) ("A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made.").

Accordingly, the first question the Court must address is whether any of Plaintiff's speech that forms the basis of her retaliation claim was made as a citizen. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. The Third

---

[5] With respect to this third element, a court should balance the interests of the employee and the employer under *Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). *De Ritis*, 861 F.3d at 452.

Circuit has instructed this is a "practical inquiry" because "the line between citizen speech and employee speech varies with each case's circumstances." *De Ritis*, 861 F.3d at 453 (quotation marks omitted). Accordingly, courts have refused to "draw the line using . . . simple tests." *Id*. Thus, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Lane v. Franks*, 134 S. Ct. 2369, 2379, 189 L. Ed. 2d 312 (2014).

Instead, "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id*. Further, "though speech may be protected even if it 'concerns information related to or learned through public employment,' an employee does not speak as a citizen if the mode and manner of his speech were possible only as an ordinary corollary to his position as a government employee." *De Ritis*, 861 F.3d at 454 (internal citations omitted) (quoting *Lane*, 134 S.Ct. at 2377). "'[W]hether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law.'" *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 988 (3d Cir. 2014) (alteration original) (quoting *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007)). "Specifically, the scope and content of a plaintiff's job responsibilities is a question of fact, but the ultimate constitutional significance of those facts is a question of law." *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015).

Although this analysis defies a simple test, the Third Circuit has recently provided

some additional contours to the inquiry. In *De Ritis v. McGarrigle*, the plaintiff, an Assistant

Public Defender was terminated at least in part because, during "idle chatter while waiting

for court to begin or end," he made a comment to judges, private attorneys, and his

colleagues that he was being punished by the Public Defender for taking too many cases to

trial. 861 F.3d at 449-51. The plaintiff brought suit, claiming the termination violated his

First Amendment rights. *Id*. at 451. The Third Circuit found that the plaintiff's in-court

statements were not citizen speech. *Id*. at 453-54. Noting that it was "undisputed that [the

plaintiff]'s ordinary job duties included in-court obligations to build rapport with the Court and

other attorneys," the Court held that the plaintiff's "in-court statements to attorneys and

judges were all made while waiting for a proceeding on the record to begin or end, and thus

were part and parcel of his ordinary job duties—not citizen speech." *Id*. (internal citations

and quotation marks omitted). The Court then stated that "an employee does not speak as

a citizen if the mode and manner of his speech were possible only as an ordinary corollary

to his position as a government employee" and that, in this case, the plaintiff "had the

opportunity to speak in court to attorneys and judges only as an ordinary corollary to his

position as an Assistant Public Defender." *Id*. at 454. According to the Court,

> To be sure, citizens may offer truthful in-court testimony as witnesses, may
> bring class action lawsuits based on information learned through their jobs,
> and may even report alleged workplace misconduct to government officials
> . . . . Yet, just as citizens do not complete internal police counseling forms,
> which are reserved for police officers, they also do not make idle chatter with
> attorneys and judges while waiting for court to begin or end as a public

> defender representing a client may do. Such chatter is not citizen speech and
> is not protected by the First Amendment.

*Id.* (internal citations, alterations, and quotation marks omitted).

Here, Plaintiff primarily contends that her protected speech was her report to District Attorney Salavantis. It is undisputed that, under the County Ethics Code, Plaintiff was "encouraged to disclose any information which . . . she believe[d] evidences a violation of any law, rule or regulation." (Doc. 58-5). When Plaintiff first became concerned that another County employee had recorded her in violation of Pennsylvania law, she reported it to her supervisor, Defendant Parsnik, and the County Solicitor, David Pedri. (Dep. of Donna Davis Javitz, Doc. 69-6 at 72-73; Dep. of David Parsnik, Doc. 69-7 at 38-39). Defendant Parsnik and Solicitor Pedri agreed that it appeared that Plaintiff was recorded without her consent. (Dep. of Donna Davis Javitz, Doc. 69-6 at 73-74; Dep. of David Parsnik, Doc. 69-7 at 38-39). Plaintiff recommended taking the information to another County employee, the District Attorney, and Defendant Parsnik agreed. (Dep. of Donna Davis Javitz, Doc. 69-6 at 73-74; Dep. of David Parsnik, Doc. 69-7 at 26, 39). Plaintiff then emailed someone at the District Attorney's Office to set up a meeting and notified Defendant Parsnik of the meeting. (Dep. of Donna Davis Javitz, Doc. 69-6 at 72-74). Plaintiff then went with Defendant Parsnik to discuss the matter with District Attorney Salavantis and, in the meeting,

Defendant Parsnik did all or most of the talking. (*Id.* at 74; Dep. of David Parsnik, Doc. 69-7 at 26).[6]

Viewing this evidence in a light most favorable to Plaintiff, Plaintiff was not acting as a citizen when she made the report to the District Attorney. She became aware, through her employment as Director of Human Resources, that another County employee possibly committed a crime. She took that information to her supervisor, as she was encouraged to do under the County Ethics Code, and made a recommendation as to how they should proceed with the information. Her supervisor agreed with her recommendation, and they went together to notify another County employee. That is, Plaintiff became aware of the information through her employment, was encouraged to report the information by the policies of her employer, and reported the information only to other County employees. *See Scrip v. Seneca*, 651 F. App'x 107, 110 n.4 (3d Cir. 2016) ("[T]he audience of [the employee's] speech is an important consideration in determining whether speech is 'official' or 'citizen' speech"). In short, everything Plaintiff did was as a public employee, not as a citizen. *See Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643,

---

[6] During the deposition of Defendant Parsnik, where Plaintiff acted as her own attorney and did all of the questioning, the following exchange took place with respect to the discussion Plaintiff and Defendant Parsnik had with the District Attorney:

> Q. And, in fact, you took over [the] lead in the discussion, right? I didn't say anything in that meeting.

> A. I took over the lead from my experience as to how are we going to further this without any evidence or proof of that they had a recording device in the meeting, because we had the notes but we had no other proof as to how they were taken.

(Dep. of David Parsnik, Doc. 69-7 at 39).

652-53 (3d Cir. 2018) (holding that a public employee was not speaking as a citizen when attended a closed door meeting at the direction of her supervisor and discussed matters within the scope of her employment).

Further, the mode and manner of Plaintiff's speech shows that it was not made as a citizen. Plaintiff, accompanied by her supervisor, met directly with the District Attorney to report her allegations. While citizens certainly may report crimes, citizens generally do not meet with their supervisor and the District Attorney to do so. *See De Ritis*, 861 F.3d at 454 (internal citations, alterations, and quotation marks omitted) ("To be sure, citizens may offer truthful in-court testimony as witnesses, [but] they . . . do not make idle chatter with attorneys and judges while waiting for court to begin or end as a public defender representing a client may do."). Plaintiff testified that as part of her job, she would sometimes meet with the District Attorney. (Dep. of Donna Davis Javitz, Doc. 69-6 at 78). Thus, it was by virtue of Plaintiff's position as a public employee that Plaintiff was allowed to make the speech in the mode and manner in which she did; that is, accompanied by her supervisor and directly to the District Attorney. Accordingly, Plaintiff's report to the District Attorney was made as a County employee, not as a citizen.

Next, Plaintiff claims that her repeated inquiries into the status of the investigation of the illegal recording constituted protected speech. Viewing the evidence in a light most favorable to Plaintiff, she made these inquiries to Defendant Parsnik, Solicitor Pedri, and District Attorney Salavantis. Given that all these inquiries were made to the same

23

individuals who were involved in the initial report, Plaintiff was only able to make these inquires by virtue of her position as Director of Human Resources for the County. Thus, for largely the same reasons as stated above, they were not citizen speech. *See De Ritis*, 861 F.3d at 454.

Nevertheless, even if Plaintiff's inquiries as to the status of the investigation were made as a citizen, they were not matters of public concern. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 134 S. Ct. at 2380 (quotation marks ommited). "In determining whether the speech at issue satisfies this element, courts should take into account the employee's motivation as well as whether it is important to our system of self-government that the expression take place." *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015). As the Third Circuit has instructed,

> Because we are not to make a superficial characterization of the speech or activity taken as a whole, we conduct a particularized examination of each activity for which the protection of the First Amendment is claimed to determine whether it involves a matter of public concern, while taking care not to cherry pick something that may impact the public while ignoring its manner and context. That is to say, we will hold that a discrete unit of speech addresses a matter of public concern if it discusses fundamental problems reaching beyond the employee's day-to-day minutiae, such as a concern that all assistant district attorneys in an office are required to work on political campaigns, a concern about academic integrity in today's youth generally, or a concern about academic standards applicable to a university as a whole. But if a discrete unit of speech addresses only the employee's own problems,

24

and even if those problems brush against a matter of public concern by virtue of that employee's public employment, then that speech is merely a personal grievance.

*De Ritis*, 861 F.3d at 455 (internal citations, alterations, and quotation marks omitted).

Here, Plaintiff testified at her deposition that during an unrelated meeting with District Attorney Salavantis, Plaintiff was informed that Defendant Lawton had instructed Salavantis not to pursue the investigation. (Dep. of Donna Davis Javitz, Doc. 69-6 at 78). Thereafter, Plaintiff inquired as to the status of the investigation from Defendant Parsnik and Solicitor Pedri. (*Id*. at 78-80). Plaintiff testified that she asked Defendant Parsnik and Solicitor Pedri "[b]ecause I didn't know what they knew." (*Id*. at 80).

In *Carmichael v. Pennsauken Township Board of Education*, the Court held that inquiries based on personal curiosity as to the status of an investigation are not matters of public concern. 462 F. Supp. 2d 601, 611 (D.N.J. 2006). In that case, the plaintiff, a teacher, received a threatening call from students and reported it to the principal. *Id*. at 604-05. The plaintiff thereafter claimed that he was retaliated against for making the report and making follow up inquiries about the status of the investigation into his report. *Id*. at 610. According to the Court,

> Plaintiff does not allege that he expressed concerns regarding future incidents of violence against himself or other teachers. In the instant action, Plaintiff was merely asking, "what's going on?" regarding his personal issue with the investigation of the students, which does not rise to the level of a matter of public concern and thus is not an activity protected by the First Amendment.

*Id*. at 611.

Here too, Plaintiff testified that she followed up on the investigation because she "didn't know what they knew." (Dep. of Donna Davis Javitz, Doc. 69-6 at 80). Plaintiff did not do anything more with the information she gained. Nor did Plaintiff express any concern about the community or anything beyond her own personal curiosity as a potential victim of a crime. Thus, "an examination of the record as a whole, including the content, form and context of the speech, reveals that Plaintiff 'did not seek to inform the public that the [Defendants were] not discharging [their] governmental responsibilities . . . nor . . . seek to bring to light actual or potential wrongdoing or breach of public trust.'" *Carmichael*, 462 F. Supp. 2d at 612 (alterations in original) (quoting *Gaj v. United States*, 800 F.2d 64, 67 (3d Cir. 1986)). Therefore, Plaintiff's inquiries into the status of the investigation were not matters of public concern.

Accordingly, because the record reveals that Plaintiff did not engage in any activity protected by the First Amendment, the Court will grant Defendants' Motion for Summary Judgement as it pertains to Plaintiff's First Amendment retaliation claim.[7]

### B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has moved for summary judgement with respect to her Fourteenth Amendment claim. (Docs. 62, 65). "When confronted with cross motions for summary judgment from both sides, the Court must consider each motion separately." *Harp v. Rahme*, 984 F. Supp. 2d 398, 424 (E.D. Pa. 2013). Here, however, each motion turns on

---

[7] For reasons discussed in Part C, *infra*, the Court need not address Defendants arguments concerning Plaintiff's state law claims.

the exact same evidence. That is to say, Plaintiff's Motion does not rely on any evidence that was not already addressed in the context of her opposition to Defendants' Motion.[8] Seeing as the Court has already determined that, when viewing this evidence in a light most favorable to *Plaintiff*, it is undisputed that Plaintiff was an at will employee, Plaintiff fairs no better when that same evidence is view in a light most favorable to Defendants.

Accordingly, Plaintiff has failed to establish that the undisputed facts in this case show that she could only be fired for just cause and that she was therefore entitled to a pre-termination hearing. Consequently, the Court will deny Plaintiff's Motion for Summary Judgment.

## C. Remaining State Law Claims

As the Court will grant Defendant's Motion for Summary Judgment as it pertains to all of Plaintiff's federal claims, the Court must decide whether to retain jurisdiction over the remaining state law claims. Title 28, Section 1367(c)(3), of the United States Code provides that a "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Further, the Third Circuit has instructed "that, 'where the claim over which the district court has original

---

[8] Specifically, Plaintiff's Motion relies entirely on the fact that Defendant Parsnik testified at his deposition that, under his interpretation of the Home Rule Charter and the Personnel Code, the Director of Human Resources is a career service position. (Doc. 64 at 2-3). Based on this, Plaintiff argues that it is undisputed that she was hired as a career service employee and that, therefore, pursuant to the Personnel Code, she could only be fired for cause. As already discussed, while Defendant Parsnik's lay interpretation of those documents may bear on his state of mind, Defendant Parsnik's testimony does not resolve the questions of statutory interpretation presented in this case. As the Court has already determined, the Director of Human Resources is not categorically a career service positon under the Home Rule Charter and Personnel Code. Thus, Plaintiff's reliance on Defendant Parsnik's testimony is misplaced.

27

jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995)).

Here, the Court finds that there are no "considerations of judicial economy, convenience, [or] fairness to the parties" which merit this Court retaining jurisdiction over the remaining state law claim. Accordingly, given that this Court has dismissed all the claims over which it had original jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## V. CONCLUSION

For the reasons outlined above, this Court will deny Plaintiff's Motion for Partial Summary Judgment, grant in part Defendants' Motion for Summary Judgment, and decline to exercise jurisdiction over the remaining state law claims. A separate Order follows.

Robert D. Mariani
United States District Judge