# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| DONNA DAVIS JAVITZ, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | 3:15-CV-2443 |
| | : | (JUDGE MARIANI) |
| LUZERNE COUNTY, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Here the Court considers Plaintiff's Motion in Limine to Preclude Any Evidence or Argument of Collateral Benefits. (Doc. 170.) With the motion, Plaintiff requests that the Court preclude Defendants from arguing that Plaintiff's damages (lost past and future wages) should be reduced or offset by her small private law practice or unemployment benefits. (*Id.* at 1.)

## I. BACKGROUND

On December 21, 2015, Plaintiff filed the above-captioned action after she was terminated from her position as the Director of Human Resources of Luzerne County, Pennsylvania. (Doc. 1.) Plaintiff was hired for the position on August 4, 2014, and was terminated on October 26, 2015. (*Id.* ¶¶ 39, 72, 78.) Pursuant to 42 U.S.C. § 1983, the Complaint contained a Fourteenth Amendment procedural due process claim and a First Amendment retaliation claim. (*Id.*) Plaintiff also asserted a Breach of Contract claim and a claim for Violation of PA Whistleblower Act and Wrongful Termination in Violation of Public

Policy 43 P.S. Section 1423(A). (*Id.*) Defendants in the action are Luzerne County, Robert Lawton, County Manager for Luzerne County at all relevant times, and David Parsnik, Division Head for Administrative Services for Luzerne County at all relevant times. (*Id.* ¶¶ 2-4.) Plaintiff subsequently filed an Amended Complaint on February 19, 2016, (Doc. 18) and a Second Amended Complaint on April 5, 2017, (Doc. 58).

In response to Defendants' Motion for Summary Judgment (Doc. 66), the Court issued a Memorandum Opinion (Doc. 108) and Order (Doc. 109) on March 29, 2018, granting Defendants' motion in part and directing the Clerk of Court to enter judgment in favor of Defendants on Plaintiff's Fourteenth Amendment due process claim and First Amendment retaliation claim. (Doc. 109 ¶¶ 2, 3.) The Court also dismissed Plaintiff's state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). (*Id.* ¶ 4.)

After the Court denied Plaintiff's Motion for Reconsideration Under Federal Rule of Civil Procedure 59, Plaintiff appealed the Court's determination regarding the First Amendment and Fourteenth Amendment claims. (Docs. 113, 117, 118.) With its October 10, 2019, opinion, the Circuit Court affirmed the Court's ruling regarding the Fourteenth Amendment due process claim and remanded the matter for further proceedings regarding the First Amendment retaliation claim. *Javitz v. County of Luzerne*, 940 F.3d 858 (3d Cir. 2019).

As a result of this decision, the only claim now before this Court is Plaintiff's First Amendment retaliation claim. Plaintiff claims that she was terminated in violation of her

First Amendment rights after she filed a report with the Luzerne County District Attorney alleging that Paula Schnelly, AFSCME local president and an employee of the District Attorney's office in Luzerne County, illegally recorded a meeting conducted by Plaintiff with AFSME representatives and union members present. (Doc. 58 ¶¶ 50, 51, 55.) The meeting had to do with an unfair labor practice charge AFSME had filed with the Pennsylvania Labor Relations Board against Luzerne County in or about March 2015. (*Id.* ¶¶ 54-44.)

Defendants contend that "Plaintiff was terminated because of her conduct towards the unions, her refusal to follow through with hiring a Human Resources Business Partner, her failure to initiate policies, procedures and initiatives as directed and issues with the employment application for a candidate for an assistant public defender." (Doc. 67 ¶ 70 (citing Ex. 7 to Defendants' Appendix at 42:11-24).)

Trial is set to commence on June 30, 2021. (*See* Doc. 198.) The parties have filed numerous motions in limine (Docs. 147, 149, 151, 153, 169, 170), including Defendants' motion at issue here, which are now ripe for disposition.

## II. STANDARD OF REVIEW

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*

3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406. "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000). The Supreme Court has long recognized that "[a] reviewing court is handicapped in an effort to rule on subtle evidentiary questions outside a factual context." *Luce v. United States*, 469 U.S. 38, 41 (1984). Thus, a district court's ruling on a motion in limine "is subject to change when the case unfolds." Id. While this is particularly so if the actual testimony at trial differs from what was anticipated in a party's motion in limine, but "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Id.* at 41-42.

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of

4

questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

### III. ANALYSIS

Plaintiff asserts that the Court should preclude Defendants from arguing that Plaintiff's damages (lost past and future wages) should be reduced or offset by her small private law practice or unemployment benefits pursuant to the collateral benefit rule. (Doc. 170 at 1, 6.) Defendants respond that Plaintiff's income from her private law practice should not be precluded from consideration because it is not precluded by the collateral benefit rule. (Doc. 178 at 5.)

The Third Circuit explained the collateral benefit rule in *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 83 (3d Cir.1983).

> Under the collateral benefit rule, payment which a plaintiff receives for his or her loss from another source is not credited against the defendant's liability for all damages resulting from its wrongful or negligent act. Restatement (Second) of Torts § 920A(2) (1979); 3 L. Frumer, R. Benoit & M. Friedman, Personal Injury § 4.03 (1965); *see also Smith v. United States*, 587 F.2d 1013, 1015 (3d Cir.1978); *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 179–180 & n. 3 (3d Cir.1977). In addition to unemployment compensation, payments under Social Security or welfare programs and similar benefits have been treated as collateral. *See, e.g., Titchnell v. United States*, 681 F.2d 165 (3d Cir.1982) (Medicare); *Smith v. United States, supra* (Social Security); *Varlack v. SWC*

5

> Caribbean, Inc., supra (government-reimbursed medical and rehabilitative expenses); see also 3 L. Frumer, R. Benoit & M. Friedman, supra, at § 4.03[3]; Restatement (Second) of Torts, supra, at § 920A comment c(3).
>
> The rationale for a rule that at first glance may appear to provide an inequitable double recovery is that a wrongdoer should not get the benefit of payments that come to the plaintiff from a source collateral to the defendant. See Kauffman, 695 F.2d at 346–47 (quoting Gullett Gin, 340 U.S. at 364, 71 S.Ct. at 339–340); Ford Motor, 645 F.2d at 195–96. There is no reason why the benefit should be shifted to the defendant, thereby depriving the plaintiff of the advantage it confers. See Kassman v. American University, 546 F.2d 1029, 1034 (D.C.Cir.1976) (per curiam).

Craig, 721 F.2d at 83.

The Court agrees with Defendants that monies Plaintiff earned through her private legal practice are not benefits from a collateral source as that doctrine has been defined in this Circuit. Plaintiff's earnings from her law practice are not akin to unemployment compensation, Social Security, or welfare programs—her earnings are not "payment which [Plaintiff] receive[d] for . . . her loss from another source." Id. (emphasis added). As stated by Defendants, "[t]he money earned by Plaintiff through her private law practice was not received as the result of any alleged actions of Defendants." (Doc. 178 at 6.) Plaintiff did not file a reply brief, and, therefore, she has not disputed this assessment.

Alternatively, Plaintiff contends that the income from her law practice should not be considered in determining damages because it constitutes "moonlight work," i.e., "work that [Plaintiff] could have, and did, perform simultaneously while employed by Defendant." (Doc. 170 at 6 (citing Smith v. Normandy Properties, LLC, Civ. A. No. 07-351, 2008 WL 4443827, at * 2 (W.D. Pa. Sept. 26, 2008); Rodriguez v. Taylor, 569 F.2d 1231, 1243 (3d Cir. 1977)).)

Plaintiff sets out the following sums which Defendant's expert states she earned from her private law practice: $1,032 in 2010; $7,008 in 2011; $7,391 in 2012; $8,885 in 2013; $416 in 2014; $6,323 in 2015; $40,168 in 2016; $4,964 in 2017; and $7,092 in 2018. (Doc. 170 at 3-4.)

Defendants posit that they are entitled to present testimony from Plaintiff and James Stavros, their economic expert, regarding Plaintiff's failure or inability to perform her legal practice while working for Luzerne County. (Doc. 170 at 7.) Defendants specifically argue they are entitled to show that the $416.00 earned by Plaintiff from her law practice in 2014 was earned before her employment with the County began and the $6,326.00 earned in 2015 was earned after her employment with the County ended on October 26, 2015. Implicit in this position is that if Plaintiff earned no money from her law practice while employed by the County, amounts earned from her legal practice after her termination cannot be considered "moonlight work" which would not affect an award of damages in that "moonlight work" is what she could have undertaken while employed.

As with the Court's determination regarding the collateral source rule, Plaintiff does not refute that Defendants should be allowed to offer evidence regarding whether income from her private law practice should be considered "moonlight work" which would not be considered in calculating damages. Therefore, Plaintiff's motion is properly denied.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion in Limine to Preclude Any Evidence or Argument of Collateral Benefits (Doc. 170) will be denied. A separate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge