THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONNA DAVIS JAVITZ,                        :
                                           :
            Plaintiff,                      :
                                           :
    v.                                     :    3:15-CV-2443
                                           :    (JUDGE MARIANI)
LUZERNE COUNTY, ROBERT LAWTON,:
Individually, and DAVID PARSNIK,           :
Individually,                              :
                                           :
            Defendants.                    :

**MEMORANDUM OPINION**

I. INTRODUCTION

Here the Court considers Plaintiff's Motion to Vacate Judgment Entered July 12,

2021 (Doc. 287).  Plaintiff is now proceeding *pro se* but was represented at trial by

Attorneys Mark Frost and Dylan Hastings with Mr. Hastings serving as lead counsel.  (*See*

Doc. 231 ¶ 5.)  Plaintiff brings this Motion based on her assertion that she became aware of

material evidence that would have changed the verdict several months after judgment was

entered.  (Doc. 287 at 3.)  Specifically, Plaintiff alleges that the fraud in this case is based

on the testimony of Defendant's witness, Shelby Watchilla, and Defendant's attorneys'

failure to disclose that Ms. Watchilla had defamation litigation pending in state court against

Luzerne County which she and the County planned to settle after she testified in this case.

(*Id*.)  For the reasons that follow, the Court will deny Plaintiff's Motion.

## II. BACKGROUND

On December 21, 2015, Plaintiff filed the above-captioned action after she was terminated from her position as the Director of Human Resources of Luzerne County, Pennsylvania. (Doc. 1.) Plaintiff was hired for the position on August 4, 2014, and was terminated on October 26, 2015. (*Id.* ¶¶ 39, 72, 78.) The operative Complaint is Plaintiff's Second Amended Complaint filed on April 5, 2017. (Doc. 58.) The Second Amended Complaint contains four counts: Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983; First Amendment retaliation claim pursuant to 42 U.S.C. § 1983; state law claim for Violation of PA Whistleblower Act and Wrongful Termination in Violation of Public Policy; and state law claim for Violation of Legislative Enactments. (*Id.*) Defendants in the action are Luzerne County, Robert Lawton, County Manager for Luzerne County at all relevant times, and David Parsnik, Division Head for Administrative Services for Luzerne County at all relevant times. (*Id.* ¶¶ 2-4.)

In response to Defendants' Motion for Summary Judgment (Doc. 66), the Court issued a Memorandum Opinion (Doc. 108) and Order (Doc. 109) on March 29, 2018, granting Defendants' motion in part and directing the Clerk of Court to enter judgment in favor of Defendants on Plaintiff's Fourteenth Amendment due process claim and First Amendment retaliation claim. (Doc. 109 ¶¶ 2, 3.) The Court also dismissed Plaintiff's state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). (*Id.* ¶ 4.)

After the Court denied Plaintiff's Motion for Reconsideration Under Federal Rule of

Civil Procedure 59, Plaintiff appealed the Court's determination regarding the First

Amendment and Fourteenth Amendment claims. (Docs. 113, 117, 118.) The Circuit

Court's decision on the appeal contained the following summary of the case:

> In July 2014, Javitz was offered a position with Luzerne County as the Director of Human Resources. Her offer letter contained the terms of her employment, and described the job as: "Management Level, Non Union, *Exempt*, Regular Full Time," and that her position was "*at will*." Javitz signed and accepted the offer, and began employment on August 4, 2014.
>
> As Director of Human Services, Javitz was responsible for—among other duties—commencing the hiring process for vacant positions, negotiating contracts, dealing with employee complaints, responding to grievances, conducting investigations, and attending meetings. Once she began work, Javitz participated in two investigatory meetings with the American Federation of State, County, and Municipal Employees ("AFSCME"), which eventually resulted in ASFSCME filing an unfair labor practices suit in March 2015.

> ### A. Javitz's Allegations of Wiretapping

> Javitz claimed that a document filed in the ASFSCME lawsuit was a transcript of the investigatory meetings in which she participated. She suspected that a specific county employee, AFSCME union representative Paula Schnelly, had recorded the meeting without Javitz's consent—a crime under 18 Pa. Cons. Stat. § 5703.
>
> Javitz reported her concern to her supervisor, David Parsnik, who agreed that the meeting may have been recorded. The two met with the District Attorney, who indicated that she would refer the matter to the Office of the Attorney General due to a conflict of interest. Javitz claims that the County Manager, Robert Lawton, intervened and instructed the District Attorney to drop the matter, which Defendants deny.
>
> After reporting the matter, Javitz followed up with Parsnik and the County Solicitor about the status of the investigation multiple times.

After making this report to the District Attorney, Javitz alleges that county employees retaliated against her. She claims that her supervisor assigned work directly to her subordinates and cut her out of those and other assignments for which Javitz would have otherwise been responsible. She also cites her office's relocation in May of 2015 as an example, but the move was planned prior to her hiring.

Finally, on October 26, 2015, Javitz was fired. She was given no reason for her termination. *Id.* She requested a *Loudermill* hearing, but was denied. *Id.*

### B. County's Response

The County maintains that Javitz was fired because of her "conduct toward [county] unions, her refusal to follow through with hiring a Human Resources Business Partner [ (a vacant position in the Human Resources Department during Plaintiff's County employment) ], her failure to initiate policies, procedures and initiatives as directed[,] and [her handling of] issues with the employment application for a candidate for an assistant public defender position."

*Javitz v. County of Luzerne*, 940 F.3d 858, 861-62 (3d Cir. 2019) (internal citations omitted).

With its October 10, 2019, opinion, the Circuit Court affirmed the Court's ruling regarding the Fourteenth Amendment due process claim and remanded the matter for further proceedings regarding the First Amendment retaliation claim. As a result of the Third Circuit decision, the only claim before the Court was Plaintiff's First Amendment retaliation claim.

Trial commenced on July 6, 2021, and ended on July 9, 2021. Attorneys Hastings and Frost represented Plaintiff. Attorney Bufalino represented Defendants. Plaintiff testified on the first day of trial. (*See* Doc. 260.) On the second day of trial, Plaintiff's testimony continued, and the following other witnesses appeared: C. David Pedri, Chief County

Solicitor for Luzerne County at the relevant time, testified as on cross; David Parsnik,

Division Head for Administrative Services for Luzerne County at all relevant times; and

Paula Schnelly, who previously worked for the Luzerne County District Attorney's office as

an administrative assistant and was president of the local AFSME union, testified as on

cross.  On the third day of trial, the following witnesses appeared: Andrew Verzilli, Plaintiff's

economic expert; Robert Lawton, County Manager for Luzerne County at all relevant times;

and Stefanie Salavantis, Luzerne County District Attorney at all relevant times.

Plaintiff rested at the end of the third day and Defendants made a Motion for a

directed verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure.  (Trial

Transcript ("T. Tr.") Day 3 125:1-14, Doc. 262.)  The Court heard oral argument on the

motion and denied it from the bench, explaining the reasons for the decision.  (*Id.* 17-129:8.)

Mr. Bufalino then spoke about his case in chief and indicated that his economic expert

would be testifying and he had not decided whether he would call Shelby Watchilla, an

employee in Luzerne County's HR Department at the relevant time.  (*Id.* 129:16-23.)  As to

others on Defendants' witness list, the Court questioned Mr. Bufalino about who else might

testify since most on the list had already testified.[1]  (*Id.* 132:4-8.)  The parties and the Court

agreed that it would not be necessary to recall Defendants' witnesses in their case in chief

who had previously testified.  (*Id.* 132:9-133:2.)

---

[1] Defendants listed the following witnesses: Robert Lawton, David Parsnik, Shelby Watchilla, Stefanie Salavantis, David Pedri, Paula Schnelly, and James Stavros.  (Doc. 219 at 10.)  Defendants reserved the right to supplement the witness list, call rebuttal witnesses, and call witnesses identified by Plaintiff.  (*Id.*)

On the fourth day of trial the following witnesses testified: James Stavros, Defendants' economic expert; Shelby Watchilla who worked in the HR office when Plaintiff was the HR director; and Necia Gazdziak, a Luzerne County HR coordinator who worked with Ms. Watchilla and Plaintiff, testified on rebuttal. Ms. Watchilla and Ms. Gazdziak testified via Zoom.

Ms. Watchilla's testimony and the circumstances surrounding it are at issue in this Motion. As noted above, Ms. Watchilla testified on the last day of trial. She was Mr. Bufalino's last witness and only Ms. Gazdziak, Plaintiff's rebuttal witness, followed.

Ms. Watchilla's direct examination began at 11:27 a.m. and ended at 11:30 a.m. (T. Tr. Day 4 41:25-42:16, Doc. 263.) Relevant to the current Motion, the following dialog occurred:

> Q. Can you tell the members of the jury your impression of the environment in that office, in working for Donna Davis Javitz?
>
> A. The environment was very uncomfortable, it was not a place I enjoyed going every day. I would describe it as being toxic.

(*Id.* 42:12-16.) Because Mr. Hastings expressed some difficulty hearing after this exchange, Mr. Bufalino asked Ms. Watchilla to repeat her answer and she responded: "Sure, It was a very uncomfortable environment, I would say, toxic, not a place I wanted to go in to work every day." (*Id.* 43:4-5.) These were Ms. Watchilla's only remarks about her work environment on direct examination.

On cross-examination, which lasted for approximately ten minutes (*id.* 43:21-50:2),

Mr. Hastings followed up on Plaintiff's description of her work environment and the following

dialog took place:

> Q. You never said, during your deposition, when given the opportunity, that
> the work life or the workplace with Donna was toxic, did you?
>
> A. I said it was very uncomfortable. I don't know if I used the word, toxic, or
> not, but that would definitely be a description that I would elaborate on from
> uncomfortable, but it was definitely in there that I did not say it was a good
> working environment, at all.
>
> Q. I'll represent to you that you never said it was toxic, okay? And going
> forward, you mentioned that it was uncomfortable, and you testified it was
> only uncomfortable for you and no one else, you didn't know how anyone else
> felt; isn't that correct?
>
> A. I can only speak for myself.

(*Id.* 45:1-14.)

> Q. You testified in your deposition that lasted over four hours that you never
> once told anyone that Donna made you feel uncomfortable; isn't that correct?
>
> A. Yes.
>
> Q. Did you voluntarily offer to testify in this case?
>
> A. I was subpoenaed.
>
> Q. You were subpoenaed by who?
>
> A. Luzerne County, my former employer.
>
> Q. Prior to you receiving the subpoena, did you have conversations with
> Luzerne County regarding this case? Yes or no?
>
> A. No.

(*Id.* 46:15-47:1.)

> Q. . . . You testified that you don't ever recall any employees making complaints about Donna; isn't that correct?
>
> A. Correct.
>
> Q. When asked at your deposition to describe the relationship between Donna and the employees of Luzerne County, you responded or you answered that you did not see much interaction. Isn't that correct?
>
> A. Yes.

(*Id.* 49:3-11.)

On redirect examination, Mr. Bufalino again questioned Ms. Watchilla about the work

environment:

> Q. Did any of the questions Mr. Hastings asked you change your testimony, with regards to the environment that existed in the office?
>
> A. I would just reiterate that the environment was not good, and I would equate it to being a toxic work environment.
>
> Q. Did you say, toxic workplace?
>
> A. Yes.
>
> Q. To whom do you attribute that to?
>
> A. Ms. Javitz.

(*Id.* 51:1-9.)

On recross, the following exchange occurred:

> Q. Ma'am, just to follow-up and wrap this up. You still agree with me that, at your deposition, you never testified that the workplace was toxic; right?

A. I believe I said, uncomfortable.

Q. But you never testified it was toxic; right?

MR. BUFALINO: Judge, I think we have covered this.

THE WITNESS: No, I did not.

BY MR. HASTINGS:

Q. You never told anyone about your feelings being uncomfortable in the workplace; right?

A. No. I was afraid she would let me go.

Q. And you didn't voluntarily appear in this matter; correct?

MR. BUFALINO: Judge, that's been asked and answered.

THE COURT: That's true.

(*Id.* 51:15:21:3.)

The jury returned a verdict for Defendants on July 9, 2021. (Doc. 251.)  The Clerk of Court entered judgment in favor of Defendants on July 12, 2021. (Doc. 252.)

On August 9, 2021, Plaintiff filed the "Motion for a New Trial Under Federal Rules of Civil Procedure, Rule 59a *and* Motion to Alter or Amend Judgment Under Federal Rules of Civil Procedure, Rule 59e *and* Motion for Relief from Judgment Under Federal Rules of Civil Procedure, Rule 60(b)(6)" (Doc. 265).  The Court denied the motion by Order of July 22, 2022, (Doc. 294) for the reasons set out in the Memorandum Opinion of the same date (Doc. 293).

9

Plaintiff's Motion to Vacate Judgment Entered on July 12, 2021 (Doc. 287) was filed on June 21, 2022.   Her supporting brief was filed on July 5, 2022.  (Doc. 288.)  Defendants filed their opposition brief on July 19, 2022.  (Doc. 291.)  With the filing of Plaintiff's reply brief (Doc. 295) on August 2, 2022, this matter became ripe for disposition.

The following additional facts are relevant to Plaintiff's pending motion.  Ms. Watchilla's deposition took place on November 16, 2016.  (*See* Doc. 69-15.)   At the time of the deposition, Ms. Watchilla was working for Luzerne County in the Office of Human Services.  (Watchilla Dep. Tr. 44-18-45:6, Doc. 69-15.)

In October 2020, Ms. Watchilla filed a Complaint in the Luzerne County Court of Common Pleas against Luzerne County and Walter Griffith, a member of the Luzerne County Council at the time, in his individual capacity.  (Luz. Co. Compl., Doc. 292-1.) Plaintiff was represented by Attorney William Vinsko.  Attorney John Dean represented Luzerne County, and Attorney Lawrence Kansky represented Mr. Griffith.[2]  (*See* Doc. 287-1 at 8, 13.)   According to the Complaint, Ms. Watchilla had been appointed Luzerne County Director of Elections on December 5, 2019, by David Pedri who was then the Luzerne County Manager.  (Doc. 292-1 ¶ 13.)  She retained that position at the time she filed her Complaint in Luzerne County in October 2020.  (*Id.* ¶ 14.)   In the Complaint, Plaintiff avers that Griffith "shared posts and made intentionally-defamatory statements against Watchilla

---

[2] Based on an exhibit attached to Plaintiff's pending motion, it appears that Attorney Bufalino was also counsel of record for Luzerne County in Ms. Watchilla's state case until December 31, 2020, when he filed his withdrawal of appearance for Luzerne County in that matter.  (*See* Doc. 287-1 at 22.)

and her handling of the Board of Elections" despite having been reprimanded for improper activity on his Facebook page in August 2020 in that the activity violated "Rules and Procedures of Operation for the Luzerne County Council at Article III." (*Id.* ¶¶ 29-31.) Count 1 of Plaintiff's Complaint is lodged against Mr. Griffith for defamation and Count 2 is for declaratory relief against both defendants. (*Id.* at 10-14.)

On July 28, 2021, Mr. Dean wrote to the presiding judge, the Honorable Carmen Minora, informing him that the parties had agreed to mediate the matter with Attorney Daniel Cummins serving as mediator. (Doc. 287-1 at 8.)  The mediation was scheduled for September 7, 2021. (*Id.* at 10.)  According to September 9, 2021, e-mails from Attorneys Kansky and Dean, a non-binding and tentative settlement was reached at the September 7th mediation with plans to meet again in November for a final mediation. (*Id.* at 17, 19.) Recipients included Attorneys Cummins and Vinsko. (*Id.*)  A Motion to Enforce Settlement Agreement was filed by Mr. Vinsko on November 12, 2021. (Doc. 287-1 at 1-6, 20.)  The Motion avers that, following the September 9, 2021, e-mail "[w]hen Attorney Kansky was informed that the mediation was complete, he then stated that Walter Griffith does not agree to the settlement any longer." (*Id.* at 4.)

The record does not show that the dispute has been resolved.  Rather, the Minutes of the April 26, 2022, Luzerne County Council meeting indicate that a motion was made "to adopt resolution Approving the Settlement of Pending Litigation in the Matter of Shelby Watchilla v. Luzerne County and Walter L. Griffith, Jr." and the motion failed 9-0. (Doc. 292-

2 at 5.)  Mr. Bufalino states in his opposition brief filed on July 19, 2022, that Ms. Watchilla's case "has not settled."  (Doc. 291 at 7.)

## III. ANALYSIS

Plaintiff argues that "[t]he verdict in this case should be vacated where Defendants' counsel committed fraud on this Court by introducing the fraudulent, immaterial, irrelevant, bought testimony of Defendants' sole witness Shelby Watchilla."  (Doc. 288 at 7.)  Plaintiff maintains that the fraud is based on "the intentional presentation of manufactured testimony offered by Shelby Watchilla" and the "intentional omission of Defendants' attorneys to disclose [certain matters] to the Court." (*Id.* at 8.)   In her supporting brief, Plaintiff identifies the following three disclosure failures:

> a. Shelby Watchilla and the County entered into an agreement to settle her defamation litigation filed at Shelby Watchilla v. Luzerne County and Walter Griffith, in his individual capacity, No. 2020-9178, October 6, 2020, after she testified in this case;
>
> b. shortly after this trial concluded, Atty. Jack Dean, counsel for the County in the Watchilla litigation and counsel for Defendants in this case, asked the Watchilla Court to hold off deciding on the County's Preliminary Objections because the parties agreed to go to mediation (Exhibit 1, Motion to Enforce Settlement) (Exhibit A, July 28, 2021 letter from Atty. Jack Dean to Judge Minora;[3]
>
> c. that mediation resulted in an agreement to settle Watchilla's defamation case for $60,000.00 all of which would be paid by the

---

[3] Although Mr. Dean remains of record in this case, he did not participate in the trial or actively participate in the filing of any document of record since April 19, 2017.  (*See* Doc. 59 and Docket generally.)

County (Exhibit 1) (See also Exhibit 2, Griffith's Brief in Response to Watchilla Motion)[.][4]

(Doc. 288 at 8.)

Plaintiff contends that her Motion should be decided under the framework established for fraud on the court which is distinct from a motion under Federal Rule of Civil Procedure 60(b) and can be brought "even years after the judgment was entered." (*Id.* at 7

---

[4] In her reply brief, Plaintiff raises two additional instances of allegedly fraudulent conduct:

Atty. Bufalino deceived the Court by intentionally failing to tell the Court that he knew Shelby Watchilla never complained to Parsnik about Davis during her employment with the County or after but proceeded to offer her testimony in the trial of this case as if it was a reason for Davis' termination; [and]

[ ] Atty. Bufalino, during the deposition of David Parsnik, stated on the record that Watchilla never complained to Parsnik about Davis.

(Doc. 295 at 8.)  The Court need not address these assertions in that arguments or issues raised for the first time in Plaintiff's reply brief are properly deemed waived. *See, e.g., Loving v. FedEx Freight, Inc.*, Civ. A. No. 3:18-CV-508, 2020 WL 2306901, at *14 (M.D. Pa. May 8, 2020) (citation omitted).

Further, if the Court were to address the merits of these allegations of fraud, they would not entitle Plaintiff to the relief requested.  This is so for several reasons, including the following:
- Mr. Bufalino did not present Ms. Watchilla's testimony "as if it was a reason for Davis' termination" and the Court clearly told the jury the reasons which Defendants had proffered for Plaintiff's termination (T. Tr. Day 1 54:1-5, Doc. 260);
- Neither the Court nor the jury could possibly have been deceived about whether Ms. Watchilla had reported her complaints about her work environment to her superiors given that Mr. Hastings made it very clear that she had not done so in his examination of Ms. Watchilla (T. Tr. Day 4 46:15-18, 51:15-25, Doc. 263);
- No relevance objection was made to Ms. Watchilla's testimony, *see infra* pp. 18-19 & n.7, -- Mr. Hastings' objection was only to her testifying by Zoom rather than in person (T. Tr. Day 3 130:11-20, Doc. 262)—and, therefore, Mr. Bufalino was not asked to offer a reason to justify Ms. Watchilla's testimony;
- As Mr. Hastings' acknowledged, Ms. Watchilla's testimony was relevant to Plaintiff's character (T. Tr. Day 3 130:11-17, Doc. 262) which Plaintiff's counsel, Mr. Frost, had raised when he called Mr. Lawton in Plaintiff's case in chief (*see id.* 45:19-47-6).

(citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944); *Herring v. United States*, 424 F.3d 384, 389 (3d Cir. 1987)).)  Plaintiff also avers that

> [a] Court must set aside a judgment based upon its finding of fraud on the court when an officer of the court has engaged in "egregious conduct."  Such a finding must be supported by clear unequivocal and convincing evidence of (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself. In addition, fraud on the Court may be found where the misconduct at issue has successfully deceived the Court.

(*Id.* at 8-9 (citing *In re Bressman*, 874 F.3d 142, 150 (3d Cir. 2017)).)

Notably, *Bressman* advised that

> [t]he Supreme Court has warned that fraud on the court actions must be "reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." Taking heed of this instruction, we held in *Herring* that only "'egregious misconduct ... such as bribery of a judge or jury or fabrication of evidence by counsel'" can be characterized as the kind of fraud that warrants relief from a judgment.

874 F.3d at 152–53.[5]

Plaintiff asserts that Mr. Bufalino committed this "type of fraud on the court and the jury by eliciting manufactured evidence from Shelby Watchilla . . . and [he] knew he was admitting manufactured testimony . . . [because] during the deposition . . . Parsnik said Watchilla never complained to him about Donna Davis." (Doc. 288 at 10.)  Plaintiff also maintains that "Atty. Bufalino was not honest in conducting this litigation by presenting manufactured evidence from a witness who would be paid for her testimony, post trial,

---

[5] Plaintiff cites a portion of this quotation in her supporting brief but replaces the word "fabrication" with "falsification."  (*See* Doc. 288 at 10.)

through a settlement with the County in her own litigation against the County." (*Id.* at 11.)

The record in this case clearly shows that Plaintiff has not, and cannot, satisfy the requisite standard. Plaintiff has presented no "clear, unequivocal and convincing evidence" of an intentional fraud by Mr. Bufalino or any officer of the court which is directed at the court itself. *Bressman*, 874 F.3d at 150. Plaintiff presents no evidence which suggests that Ms. Watchilla's testimony was manufactured, and there has been no "fabrication of evidence" by counsel. 874 F.3d at 153. As her trial testimony shows, Ms. Watchilla testified at her 2016 deposition (which occurred long before her state court case was filed or the events at issue in the case took place), that the working environment was "uncomfortable" and she additionally characterized it as "toxic" at every phase of her examination at trial. *See supra* pp. 6-9. She acknowledged that she may not have used the word toxic in her deposition: "I said it was very uncomfortable. I don't know if I used the word, toxic, or not, but that would definitely be a description that I would elaborate on from uncomfortable, but it was definitely in there that I did not say it was a good working environment, at all." (T. Tr. Day 4 45:4-8, Doc. 263.) Ms. Watchilla also confirmed that she did not know how anyone else felt, stating "I can only speak for myself." (*Id.* 45:14.) Thus, Ms. Watchilla testified about the evolution of her use of the word toxic, and she did so in a manner that does not suggest inconsistency with her deposition. With this finding, the Court has no basis to consider her testimony manufactured, fabricated, or fraudulent. Viewed in this context, Plaintiff's allegation that "the presentation of manufactured testimony from Shelby Watchilla"

15

constituted fraudulent conduct (Doc. 288 at 8) is without merit and does not support a basis for the Court to grant the relief requested.

Plaintiff's allegation that fraud in this case is based on "the intentional omission of Defendants' attorneys to disclose [certain matters] to the Court" (*id.*) also fails. First, the allegation that it was fraud for Defendants' attorneys not to disclose to the Court that "Shelby Watchilla and the County entered into an agreement to settle her defamation litigation filed at Shelby Watchilla v. Luzerne County and Walter Griffith, in his individual capacity, No. 2020-9178, October 6, 2020, after she testified in this case" (Doc. 288 at 8) is without merit. Plaintiff presents no evidence that an agreement to settle the defamation litigation preceded Ms. Watchilla's testimony. Mr. Dean wrote to Judge Minora about the parties' agreement to go to mediation *after* final judgment in this case was entered. *See supra* p. 11. Any allegation or implication that there was a pretrial agreement is belied by the fact that the defamation case had not settled at the time Mr. Bufalino filed his opposition brief on July 19, 2022.[6] *See supra* pp. 11-12.

Any allegation or implication that there was a pretrial agreement is also illogical. If there had been a scheme whereby Ms. Watchilla's testimony would lead to a favorable resolution of her state court defamation lawsuit, it could reasonably be inferred that she would have testified voluntarily, yet Ms. Watchilla testified under oath at trial that she did not

---

[6] The Affidavit of Donna Davis Javitz (Doc. 295-1) attached to her reply brief addresses how the settlement was to be funded and does not support an implication that there was a pretrial agreement.

testify willingly. *See supra* p. 7. It could also reasonably be inferred that she would have spoken with Luzerne County personnel about such an arrangement before the subpoena was issued, yet she testified that this did not happen. *Id.* Plaintiff's sworn testimony that she did not testify willingly and that she had no conversations with Luzerne County personnel before she received the subpoena strongly support a conclusion that no scheme related to her state court case was afoot. If Plaintiff seeks to imply that the ruse was orchestrated by counsel (rather than Luzerne County personnel), this too would be illogical in that the Court would have to find that an officer of the court risked his career and reputation to secure the testimony of a minor witness.

Further, the historical recognition of Ms. Watchilla as a potential witness in this case undermines the assertion that her testimony was "bought" at the eleventh hour because she got a deal with Luzerne County on her state court defamation action. In the March 2, 2016, Case Management Plan, the list of "each person whose identity has been disclosed" included Ms. Watchilla. (Doc. 22 at 4.) Plaintiff took Ms. Watchilla's deposition on November 16, 2016. (Doc. 69-15.) Defendants identified Ms. Watchilla as a witness in their February 19, 2021, Pretrial Memorandum (Doc. 197 at 10) and identified her deposition in Defendants' List of Exhibits (Doc. 197-1 at 2). Therefore, Plaintiff's testimony at trial was long expected and the fact that she was called as a witness does not implicate an improper motive.

Plaintiff cannot base her fraud claim on the mere fact that counsel in this case failed to alert this Court to Mr. Dean's correspondence informing Judge Minora that the parties agreed to go to mediation on July 28, 2021. (Doc. 288 at 8.) This case had closed at the time and there was no reason to inform this Court that unrelated state court litigation would proceed to mediation.

Plaintiff fares no better with her allegation that Defendants' attorneys failed to disclose that mediation "resulted in an agreement to settle Watchilla's defamation case for $60,000.00 all of which would be paid by the County." (Doc. 288 at 8.) Even if the agreement had ended in Ms. Watchilla's receipt of settlement funds, Defendants' counsel was under no obligation to inform this Court of such activity in the state court case when final judgment in this case had been entered long before any settlement was allegedly reached. As stated above, Plaintiff's assumption that a settlement deal had been reached in the defamation litigation before Ms. Watchilla testified in this case has no support in the record and no inference of impropriety can be drawn from the evidence of record. Such an inference would be improper based on Plaintiff's burden to produce evidence to support her Motion and would be illogical for the reasons previously discussed. *See supra* pp. 16-17.

Plaintiff's assertions regarding the relevance of Ms. Watchilla's testimony (*see, e.g.*, Doc. 288 at 8, 13) do nothing to support allegations of fraud. Ms. Watchilla's testimony about her perception of the work environment was relevant given allegations contained in Plaintiff's Second Amended Complaint and assertions made at trial about Plaintiff handling

"all issues professionally and competently" (Doc. 58 ¶ 45), and about Plaintiff being an outstanding and exemplary employee (*id.* ¶ 52; T. Tr. Day 3 46:7-47:5, Doc. 262). As discussed at length in the Court's Memorandum Opinion addressing Plaintiffs "Motion for a New Trial Under Federal Rules of Civil Procedure, Rule 59a and Motion to Alter or Amend Judgment Under Federal Rules of Civil Procedure, Rule 59e and Motion for Relief from Judgment Under Federal Rules of Civil Procedure, Rule 60(b)(6)" (Doc. 265), no error occurred with the admission of Ms. Watchilla's testimony and Plaintiff was not denied a fair trial based, in whole or in part, by the Court's allowing her to testify.   (Doc. 293 at 37-39.) Nothing in the filings related to Plaintiff's current Motion alter that determination.[7]

Plaintiff's averment that the outcome of the trial would have been different if Plaintiff had been aware of evidence about the pending case in the Luzerne County Court of Common Pleas at the time of the trial (Doc. 288 at 6) is unsubstantiated and without merit. Although Plaintiff states that "[s]everal months after the verdict, Plaintiff became aware of material evidence, that if known at the time of trial would have changed the result of the trial" (*id.*), she  does not invoke Federal Rule of Civil Procedure 60(b)(2) which allows for relief from a final judgment based on "newly discovered evidence that, with reasonable

---

[7] Plaintiff's argument that waiver based on her counsels' failure to object at trial does not apply to the failure to object to Ms. Watchilla's testimony (*see* Doc. 295 at 13), raised for the first time in her reply brief, is waived.  *See supra* p. 13 n.4.  For the reasons discussed in the text of this Memorandum Opinion, there is also no basis to conclude that waiver does not apply here because counsel has committed a fraud on the Court.  (Doc. 295 at 13 (citing *Baxter v. Bressman*, 874, F.3d 142 (3d Cir. 2017)).)

diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."

However, even if Plaintiff had done so, the provision cannot provide the relief requested.

The standard for relief pursuant to Rule 60(b)(2) requires that

the new evidence (1) be material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial (*Bohus v. Beloff,* 950 F.2d 919, 930 (3d Cir.1991)). Any party requesting such relief "bears a heavy burden" (*id.,* quoting *Plisco v. Union R. Co.,* 379 F.2d 15, 17 (3d Cir.1967)).

*Compass Tech., Inc. v. Tseng Lab'ys, Inc.,* 71 F.3d 1125, 1130 (3d Cir. 1995).

Plaintiff would not be entitled to relief pursuant to Rule 60(b)(2) because she cannot satisfy the second and third requirements.  As to the second requirement, evidence concerning Ms. Watchilla's state court litigation was a matter of public record and could have been discovered with reasonable diligence before trial in this case.  It follows that Plaintiff could have known of the Watchilla litigation through the exercise of reasonable diligence and questions related to its existence, status, and settlement negotiations could have been raised at trial.

As to the third requirement, Plaintiff has presented no evidence to support a conclusion that the newly discovered evidence would probably have changed the outcome of the trial.  First, had the fact been known to the jury that Ms. Watchilla had litigation pending in state court against Luzerne County and a member of the County Council, the outcome would not have changed because the individually named defendant in the state court litigation, Walter Griffith, has nothing to do with this case, and the factual basis for the

state court litigation is unrelated to the facts of this case. At the time of trial, no mediation had been planned or scheduled, so the mere fact of the litigation related to Ms. Watchilla would have been the extent of the evidence before the jury. Speculation about whether the fact that a witness had a pending defamation lawsuit against Defendant Luzerne County could have affected the jury is too tangential to satisfy Plaintiff's heavy burden on this issue.

Second, if somehow the fact of the litigation undermined Ms. Watchilla's credibility, the outcome of the trial would not likely have changed. The defense in this case was not grounded in the work environment in the HR Department. Ms. Watchilla's description of that environment served to undermine the positive general information about Plaintiff's work performance set out during Plaintiff's counsel's opening statement and case in chief to the extent those positive comments could be construed to relate to the internal workings of the HR Department's office. Importantly, others testified more broadly about Plaintiff's negative interaction with the unions which was one of the reasons given for her termination. For example, David Pedri, the Chief County Solicitor for Luzerne County at the relevant time, testified that, after Plaintiff assumed the H.R. director position, "[i]t became an extremely toxic environment with Ms. Davis. Every single issue was continually discussed, every single grievance was a fight, and that's not only within the union but also with management." (T. Tr. Day 2 100:17-20, Doc. 261.) By way of further example, Paula Schnelly, an AFSME local union official, provided testimony about Plaintiff's demeanor with the unions. Ms. Schnelly testified that

[u]pon meeting Ms. Javitz, things had changed completely. There was no longer the ability to carry on a civil conversation.

. . . .

Most of the time, if it was involving -- especially, in disciplinary meetings, the employees -- the union wasn't allowed to speak, first off, the employees were berated, belittled, intimidated, she bullied them, it was a very hostile situation.

(T. Tr. Day 2 194:7-9, 11-15, Doc. 261.)  She also testified that she was present at a meeting with Mr. Lawton, the County Manager:

Q. Tell me what was the subject matter of that meeting?

A. The subject matter was Donna Davis.

Q. In what particularity?

A. That we could -- just the hostile environment, hostile situations every time we tried to meet, we could not resolve grievances, we could get nowhere.

(T. Tr. Day 2 207:22-208:2, Doc. 262.)   Mr. Parsnik confirmed that issues existed with Plaintiff's handling of union matters.  (*See, e.g.*, T. Tr. Day 2 142:11-23, Doc. 261.)

Nothing about the state court defamation litigation concerned Mr. Pedri, Ms. Schnelly, or Mr. Parsnik.  Therefore, any negative impact on Ms. Watchilla's credibility related to the state court defamation litigation would not have similarly affected Mr. Pedri, Ms. Schnelly, and Mr. Parsnik.

Further, both the duration and subject matter of Ms. Watchilla's testimony compared with other witnesses who testified for Defendants show that Ms. Watchilla was a minor witness.

22

Notably, Ms. Watchilla's credibility did not go unchallenged at trial. Mr. Hastings thoroughly and adequately cross-examined Ms. Watchilla. (T. Tr. Day 4 43:21-50:1, 51:15-50, Doc. 263.) Also, the impact of Ms. Watchilla's direct testimony was diminished by the testimony of Necia Gazdziak, Plaintiff's rebuttal witness who worked in the HR Department and testified immediately following Ms. Watchilla. Ms. Gazdziak, the last witness in the case, did not share Ms. Watchilla's assessment that Plaintiff made the work environment uncomfortable and the HR office was "a place she did not want to go to." (T. Tr. Day 4 58:8-13, Doc. 263.) Rather, Ms. Gazdziak testified that the drama in the HR Department was caused by Ms. Watchilla. (*Id.* 58:14-18.) Ms. Gazdziak acknowledged that she had said in her deposition that Plaintiff sometimes made her uncomfortable (*id.* 62:11) and that it sometimes seemed that Plaintiff tried "to play Shelby and I against each other" (*id.* 64:5-6). However, Ms. Gazdziak confirmed on redirect examination that it was Shelby Watchilla who created a hostile work environment in the HR Department rather than Plaintiff. Ms. Gazdziak followed this testimony with a recitation of numerous positive aspects of her relationship with Plaintiff:

> Q. When you ever had an issue with Donna, were you able to speak to her about your concerns?
>
> A. Yes.
>
> Q. Was Donna receptive?
>
> A. Yes.
>
> Q. Did you resolve any issue between the two of you?

A. All the time.

Q. And did you feel comfortable working with Donna?

A. Yes.

Q. Did you learn from Donna?

A. Yes, I did.

Q. Was Donna a good teacher?

A. Absolutely.

Q. Was Donna a good boss?

A. Yes.

(T. Tr. Day 4 65:2-16, Doc. 263.)

Given what came before Ms. Watchilla's testimony and what came after, the foregoing dialog shows that Ms. Watchilla arguably opened the door to allowing the last word heard from trial witnesses to be about positive aspects of Plaintiff's tenure as HR Director. This contextual and sequential evaluation of trial testimony cannot support a conclusion that the outcome of the trial would have been different if Ms. Watchilla had been questioned about her state court defamation case.

If evidence related to the state court litigation somehow resulted in Ms. Watchilla not testifying at trial, there is no basis to conclude the outcome of the trial would have been different. For the reasons discussed regarding the relative insignificance of Ms. Watchilla's

testimony compared with that of other witnesses, the total absence of her testimony could not have altered the jury's assessment of the case.

Finally, were Plaintiff to seek relief pursuant to Federal Rule of Civil Procedure 60(b)(3) which allows for relief from final judgment for fraud or misrepresentation, her Motion would also fail. To show fraud under Rule 60(b)(3), a "movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case." *Stridiron v. Stridiron,* 698 F.2d 204, 206–07 (3d Cir.1983). As discussed above, Plaintiff has not shown that the adverse party engaged in fraud. Nor has she presented evidence from which the Court could conclude that Defendants engaged in misconduct.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff has not provided a basis for the Court to conduct a hearing in this matter and Plaintiff's Motion to Vacate Judgment (Doc. 287) is properly denied. Plaintiff made a request for a hearing for the first time in her reply brief. (Doc. 295 at 3 (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944)).) As discussed in the preceding section of this Memorandum Opinion, Plaintiff has presented no basis to conclude that, at the time of trial, there was an "agreement between witness Shelby Watchilla and Defendants' counsel in this case to settle her own case against the County" (Doc. 295 at 2) let alone an agreement to settle her case in return for favorable testimony in Plaintiff's trial such that a hearing to determine

"disputed facts" (*id.* at 3) and credibility is warranted.[8]  Plaintiff has not made the slightest showing that an agreement was made between the County and Ms. Watchilla to provide testimony in this case favorable to the County in return for a settlement in her defamation action.  As previously discussed, Ms. Watchilla was first identified in the March 2, 2016, Case Management Plan, her deposition took place on November 16, 2016, she was identified as a trial witness in Defendants' February 19, 2019, Pretrial Memorandum, and her deposition was identified in Defendants' list of trial exhibits.  *See supra* p. 17.  The Case Management Plan was filed and the deposition was taken long before Ms. Watchilla filed her defamation lawsuit in October 2020, *see supra* p. 10.  Thus, the identification of Ms. Watchilla as a witness at trial was expected well before she filed the state court lawsuit against Luzerne County and Walter Griffith.  Both this expectation and the fact that her trial testimony did not materially deviate from her 2016 deposition testimony demonstrate that Ms. Watchilla's appearance as a witness at trial does not implicate an improper motive on the part of Defendants' counsel.

A separate Order will be entered.

Robert D. Mariani
United States District Judge

---

[8] In *Hazel-Atlas*, the Circuit Court held a hearing regarding the alleged fraud where the allegations were supported with affidavits and exhibits.  322 U.S. at 239.  Plaintiff has not provided any such support here.  As discussed in the text, Plaintiff's allegations are merely speculative and the exhibits attached to her Motion (Docs. 287-1, 287-2, 287-3, 295-1) do not provide the asserted support.